JOHN OMAN, JR., v. TENNESSEE CENTRAL RAILWAY COMPANY.

Middle Section. October 29, 1927.

142

Both parties appealed.

McGugin, Evans & Cate, of Nashville, for John Oman, Jr.

R. F. Jackson, of Nashville, for Railway Co.

FAW, P. J. The original bill in this case was filed on September 14, 1925, in Part II of the chancery court of Davidson county, by John Oman, Jr., a citizen and resident of Davidson county, Tennessee, against the Tennessee Central Railway Company, a Tennessee corporation.

Complainant alleged that defendant had unlawfully collected from him the sum of $840.79, by way of an overcharge of eight cents per ton on 175 carloads of slag, averaging fifty tons to each car, shipped over defendant's road from Rockwood, Tennessee, to Crossville, Tennessee, and complainant prayed for a recovery of that amount, with interest.

The defendant answered and denied that it had overcharged complainant, as alleged in the bill, in the sum of $840.79, or any other sum.

Defendant alleged in its answer that it had transported over its road from Rockwood, Tennessee, to Crossville, Tennessee, 131 carloads of slag, shipped by complainant, on which defendant had charged and collected eight cents less per ton than the lawful rate, and that complainant was, on that account, indebted to defendant in the sum of $582.23, and defendant filed its answer as a cross-bill and prayed for judgment against complainant for the aforesaid sum of $582.23, with interest thereon.

The cross defendant answered the cross-bill and denied the right of cross complainant to the recovery sought by the cross-bill.

Proof was taken on behalf of the parties, respectively, and the case was finally heard on the entire record and a decree was entered (on January 10, 1927) by which the Chancellor dismissed the original bill and awarded a recovery of $576.85 in favor of the cross complainant Railway Company and against the cross defendant John Oman, Jr., but declined to allow interest thereon. The Chancellor further adjudged that cross complainant Railway Company pay the costs of the cause.

The complainant and cross defendant, John Oman, Jr., prayed, and was granted, a broad appeal from the Chancellor's decree. The defendant and cross complainant, Tennessee Central Railway Company excepted to the Chancellor's action (1) in refusing to allow interest on the amount of the recovery awarded to cross complainant, and (2) in taxing cross complainant with the costs of the cause, and prayed and obtained an appeal accordingly.

The material facts of the case and the conclusions of the Chancellor appear from the written findings and opinion filed by the Chancellor, and which we quote in full as follows:

"Findings and Opinion.

"Complainant instituted this suit to recover of the defendant $840.79, alleged to be freight overcharges on certain shipments of slag made from Rockwood to Crossville, Tennessee, to be used by complainant in the construction of a section of seven miles of highway in Cumberland county, Tennessee.

"The defendant answered and filed a cross-bill to recover of complainant $582.23 for undercharges on certain of the shipments made in the construction of said highway.

"It appears that the complainant entered into a contract with the State Highway Commission to construct seven miles of highway in Cumberland county, Tennessee. Before the contract was let by the State, the complainant, through one of his business associates, J. E. Brady, investigated the freight rate on slag from Rockwood to Crossville, Tennessee, and was told by a rate clerk of the defendant that the freight on such shipments of slag would be sixty cents per ton of 2000 pounds. G. S. Blackman, general freight agent of the defendant, before any shipments were made, told the complainant that the correct rate on slag from Rockwood to Crossville was sixty-eight cents per ton of 2000 pounds for commercial purposes, and that they had a rate of sixty cents per ton which was applicable when the slag was the 'property of Federal, State, county or municipal governments, when consigned to such government, or an officer thereof, for use in the building of public highways.'

"The defendant charged at the rate of sixty cents per ton on the first 131 cars shipped from Rockwood to Crossville, and after these 131 cars were shipped, it discovered that the rate was sixty-eight cents per ton on slag shipped from Rockwood to Crossville, and refused to transport any more slag unless the latter rate was paid, and on the 175 additional cars shipped by complainant, he paid sixty-eight cents per ton, but under protest. All of these shipments of slag were consigned to the State Highway Department, in care of John Oman, Jr., at Crossville, Tennessee, but Oman paid for it and was an independent contractor, and not an officer of the State.

"The defendant had in force and on file with the Railroad and Public Utilities Commission of Tennessee, the Interstate Commerce

Commission, and in its offices at Rockwood and Nashville, Tennessee, at and before complainant made his contract with the highway department, a voluntary tariff made by it, showing the correct rate on slag in carload lots for a distance of twenty-five miles—this being the distance from Rockwood to Crossville—of sixty-eight cents per ton of 2000 pounds, and sixty cents per ton of 2000 pounds when shipment was made to and was 'the property of Federal, county, State or municipal governments, or an officer thereof, for use in building public highways.'

"The rate clerk who quoted the rate had no authority from Blackman, the general freight agent, to make such quotation. The slag was purchased from the Roane Iron Co. by the complainant. There was paid sixty cents per ton of 2000 pounds on 131 cars of slag, carrying a weight of 14,555,600 pounds, which was eight cents less than the tariff schedule rate, and eight cents per ton on 7277.8 tons would have amounted to $582.23, which the defendant is endeavoring to collect with interest, as an undercharge, less certain overcharges of $5.38. The first twenty-seven cars shipped by complainant over the road of defendant carried a charge of sixty-eight cents per ton of 2000 pounds and were paid for on that basis. These cars were billed collect, and are not involved in the cross-bill.

"It is insisted by the complainant (1) that the rate of sixty cents per ton is applicable under the provisions of the tariff in question to the shipments made by him; (2) if not applicable, then the higher rate is unjust and unreasonable, and the lower rate gives an undue preference and discriminates against the complainant. It seems clear from the record in this case that the complainant was not an official of the State nor was the slag involved the property of the State, and therefore the rate of sixty cents was not applicable to these shipments, but the rate of sixty-eight cents was applicable.

"Both the Federal Commission and the State Railroad and Public Utilities Commission are empowered by statute to fix rates. The rates charged in this particular case are not unjust, unreasonable and discriminatory, as the acts creating these commissions empower them to make exemptions in favor of the State and Federal government, and the rate in this case has been expressly approved by the State Public Utilities Commission.

"Railroad transportation charges have been by statutes, State and Federal, taken from the domain of contract and have become matters to be regulated alone by law. New River Lbr. Co. v. Tenn. Ry. Co., 145 Tenn., 283.

"The act creating the Public Utilities Commission in this State and the statutes of which it is an amendment are modeled after the Federal Act, the general purposes of the two acts being the same, and the decisions of the Federal courts construing the Federal

Act are persuasive in the construction that should be given the Tennessee Act.

"It is well settled by the Federal and State decisions, that where an erroneous rate is quoted and collected, the carrier has to collect the correct rate even though it results in great injury or hardship to the shipper or consumer, and the carrier cannot by its conduct estop itself to sue for and recover the lawful amount. The gist of these decisions is that a shipper cannot avoid the rates fixed by the tariff schedules and by law through a contract with the carrier. C. C. C. & St. L. Ry. Co. v. So. Coal & Coke Co., 147 Tenn., 441-2, and Federal Authorities therein marshalled.

"Notwithstanding a lower rate may have been quoted to the shipper by the carrier, the carrier is not estopped to recover the correct rate. I. C. R. Co. v. Henderson Elevator Co., 226 U. S. 446.

"The cross complainant asked for interest on the undercharges sought to be recovered in this cause. Interest as a matter of right is purely statutory and in cases where its recovery is not directed by statute, it is a matter of discretion with the Chancellor. The cross complainant in this cause, through its rate clerk, gave the complainant an erroneous rate on the shipments he was to make, and after its attention was called to this erroneous rate by the collection of the proper rate on the first twenty-seven cars, it continued to ship out 131 more cars and collect the undercharge thereon. It is not entitled to recover any interest in this case, but under a technical rule of law, can collect only the difference between the rate paid and the correct rate. Tenn. Fert. Co. v. Inter. Agri. Corp., 146 Tenn., 453.

"This record presents a case where the cross complainant should pay the costs of the cause. Chap. 107, Acts 1917.

"The court is of opinion that the applicable rate to the shipments made in this cause is sixty-eight cents per ton of 2000 pounds and that the rate is not unjust, unreasonable and discriminatory, nor in any way prohibited by statute; that the original bill is without merit and should be dismissed; that the cross complainant is entitled to recover $582.23 less $5.38, and that the costs of the case should be paid by cross complainant.

"Decree accordingly,

"NEWMAN, Chancellor."

Each of the appellants has assigned errors in this court. The complainant's assignments of error are as follows:

"1. The learned Chancellor erred in holding that the rate of sixty cents per ton of 2000 pounds was not applicable to the shipments of slag as aforesaid, and that the rate of sixty-eight was the applicable rate to said shipments.

"2. The learned Chancellor erred in holding that the rate of sixty-eight cents per ton of 2000 pounds, charged in this particular

case, was not unjust, unreasonable and discriminatory, and therefore in violation of section 16 of chapter 10 of the Public Acts of Tennessee for 1897, as hereinbefore set forth.

"3. The learned Chancellor erred in holding that complainant, John Oman, Jr., and the traffic itself, to-wit: the slag, were not subjected to undue prejudice and discrimination by the defendant Railway Company in prescribing a sixty-cent rate on similar traffic, when transported for the State, and a sixty-eight-cent rate when transported for complainant, such undue prejudice and discrimination being in violation of section 17 of the aforesaid chapter 10 of the Public Acts of Tennessee for 1897 as hereinbefore set forth."

According to the published tariff schedules of the defendant Railway Company on file with the Federal Interstate Commerce Commission, the Railroad and Public Utilities Commission of the State of Tennessee, and in the offices of the defendant, which tariff schedules were open to the inspection of all shippers, including complainant, the rate on all shipments of slag, when shipped in carload lots, from Rockwood, Tennessee, to Crossville, Tennessee, was sixty-eight cents per ton of 2000 pounds, except that on slag which was "the property of Federal, State, county or municipal governments, when consigned to such governments or an officer thereof, for use on public highways" the rate was sixty cents per ton of 2000 pounds. The latter rate was applicable to Tennessee intrastate traffiic only.

It is an undisputed fact, disclosed by the record, that the slag involved in this case was the property of complainant John Oman, Jr., and was not the property of a Federal, State, county or municipal government; hence we concur in the Chancellor's finding that the sixty-cent rate was not applicable to such shipments by complainant, but that the sixty-eight-cent rate was applicable.

The sixty-eight-cent rate has been approved by the Tennessee Railroad and Public Utilities Commission as a just and reasonable rate on the shipments here in controversy, and there is no evidence in the record before us which tends to show that such rate is unjust or unreasonable.

The Railroad and Public Utilities Commission also held that the sixty-cent rate granted by defendant to Federal, State, county and municipal governments on slag for the particular use stated did not constitute an unlawful discrimination against complainant and against the traffic, in contravention of the Act of 1917, chapter 10. But, however this may be, if the sixty-eight-cent rate on all other shippers is just and reasonable, an unlawful discrimination in favor of Federal, State, county and municipal governments would not relieve complainant of the obligation to pay the lawful rate. The remedy for an unlawful discrimination by way of reduced rates to one class of shippers is not a like reduction to all other shippers. One of the main purposes of rate regulation by law is to prevent

favoritism, and to compel all alike to pay just and reasonable rates.

The Chancellor's findings of fact are sustained by the record and his conclusions of law are supported by the authorities cited in his written opinion. The complainant's assignments of error are overruled.

The assignments of error presented by the cross complainant Railway Company are as follows: (1) "The Chancellor erred in holding that defendant was not entitled to interest on its claim," and (2) "the Chancellor also erred in taxing defendant with the costs of the cause."

The allowance or disallowance of interest and the adjudication of costs were matters resting in the sound legal discretion of the Chancellor, and we are of the opinion that the facts of the case afford a sufficient predicate for the disallowance of interest to cross complainant Railway Company and for the adjudication of the costs of the cause against cross complainant. Certainly there is no basis in the record for a finding that the Chancellor has abused his discretion in these matters. The cross complainant's assignments of error are therefore overruled.

We concur in the Chancellor's findings of fact and conclusions of law, and his decree is in all things affirmed. The costs of the appeal will be equally divided—one-half of same will be adjudged against the complainant John Oman, Jr., and the surety on his appeal bond, and the remaining one-half will be adjudged against the defendant Railway Company and the surety on its appeal bond.

Crownover and DeWitt, JJ., concur