Per Curiam.
The following case agreed, and statement of facts, are submitted to the court for decision, to wit: first, Adam Huntsman entered the land in the declaration mentioned in the third surveyor’s district, the 15th June, 1815; the same was surveyed in August, 1815, and granted 28d May, 1816. It is agreed the entry under which the defendant claims was made in 1810, was surveyed in 1815, after the plaintiff’s survey was made, and granted in 1816. It is also agreed both grants cover the same land mentioned in the plaintiff’s declaration, and that the defendant has for the last three years past been and yet is in the possession of the same. It is also agreed that defendant’s entry is a special one. Now if, upon the above statement of facts, the court is of opinion the law is for the plaintiff, then judgment is to be entered for the plaintiff for his term, and six cents damages and costs, as on the finding of a jury for him. But if the court is of opinion the law is for the defendant, arising from the above statement of facts, then the judgment shall be given for the defendant, as on the finding of a jury, and he recover his costs; and that the judgment be entered of record and supersede a trial by jury.
The opinion of the court was delivered verbally by Judge RoaNE, and judgment ordered to be entered for the plaintiff. Judge Whyte observed that,. as it was a new case, being the first that had occurred under the act, he would file a written opinion at next term, which is as follows : —
The entry of the lessor of the plaintiff was made under and by virtue of the act of 1813, ch. 83, § 12 * and 4; and the question presented by the parties, by this case agreed for the opinion of the court is, whether the said'act of 1813, ch. 83, is constitutional or not. By the defendant’s counsel, it is contended that, by the laws in force at and previous to the passage of the act of 1813, the defendant, by his entry in 1810, had acquired a vested *728 right; that the act of 1813, ch. 83, § 4, declaring a forfeiture of this vested right, is unconstitutional, being after a contract made' with the State ; that this act varied the terms of that contract † that by it he, the defendant, had only to make his entry. He was not bound to survey it, much less was he bound to survey within any particular limited time ; and contends it was the duty of the State, by its officer, to perform this business without his agency or intervention. And in support of this position was cited the twentieth section of the twentieth article of the Constitution, which is in the following words: “ That no retrospective law, or law impairing the obligation of contracts, shall be made.
It is first to be seen, what is the substance of the contract between the defendant, Randolph, and the State, and then it can be more correctly ascertained whether the act of 1813, ch. 83, has impaired its obligation.
Whilst the territory now composing the State of Tennessee formed a part of the State of North Carolina, a considerable portion of it was appropriated, by the latter State to the discharge of claims originating under her laws or acts of Assembly. These claims were variously founded; some for military services performed during the war of the Revolution ; some for services performed in the first settlement of and on account of the territory itself, for laying it off, surveying, &c., &c.; others for military services performed in its protection during the infancy of its establishment; some for money paid to, and for the use of the * State of North Carolina, in the liquidation of her certificates, or the vouchers of her public debt.
In the year 1789, and before satisfaction had upon all these different claims by the issuing of the grants, North Carolina made the cession to the United States of this territory, comprising the present limits of the State of Tennessee, reserving to herself the right of perfecting the titles by grant, upon the above claims, not then so perfected. In the year 1796, this ceded territory became an independent State, the above claims not being all then satisfied, but many, very many titles founded thereon yet remaining to be perfected. The exercise of these rights, reserved by the cession act, produced a collision between the two States; which, in the year 1801, produced, on the part of the State of Tennessee, the passing an act (November 14,1801, ch. 2), interdicting in future, to any person *729 under the authority of the State of North Carolina, to enter, survey, or mark any spot of land in the State of Tennessee, for the purpose of obtaining a title for the same from the State of North Carolina; and if any such grant should be obtained from the State of North Carolina, not to be admitted as evidence in any court of record (§ 7); but that all titles on the above claims hereafter, should be perfected by the State of Tennessee. § 2.
This conflict at last terminated in an agreement or compact between the two States, and assented to by Congress, by which the State of Tennessee was authorized, acquired the right, and engaged in a certain manner to perfect the titles which by the cession act were reserved to the State of North Carolina to be by her perfected. See act of N. C. 1803; act of Tenn. 1804, ch. 14; Rev. 425; act of Congress, April 1806; act of Tenn. 1806, ch. 10; Rev. 452.
To effectuate the objects of this compact, the State of Tennessee, by her acts of 1806, ch. 1, and 1807, ch. 2, established boards of commissioners for the purpose * of judging and ascertaining the validity of unsatisfied claims to lands within this State. The original evidences of these claims (the warrants, grants, &c.) adjudged by the boards, were retained by them, and new evidences were issued (under the appellation of duplicate warrants and certificates). The claims in passing through this process lost their locality, except in some particular cases, where special entry had been made, and their former characteristic names, of military, John Armstrong’s, Evans’s, Buttalson’s, and county warrants, preemption, commissioner, and guard rights, with the particulars previously attached to them, and came forth under a perfect equality, having the same denomination, the same principles, and the same rights. The vacant disposable land of the State under the above acts of Assembly and act of Congress, was assigned as a common fund for their satisfaction. It was divided into districts, with respective and correspondent offices and officers, it is true ; but this division was for the purpose of facilitating the satisfaction of the claims, and promoting the completion of the title. Each and every office was open to each and every claimant at his pleasure. Such is the new modeled claim under the compact, in the hands of the claimant, prepared for satisfaction, but unsatisfied; and such are its privileges and incidents. It is next to be seen how it is to be satisfied. By the act of Tennessee, 1807, ch. 2, §§ 40-42, *730 every person having a duplicate warrant or certificate issued as directed by 1806 and 1807, and desirous of obtaining a grant thereon, for any vacant and unappropriated land in the State, shall produce said warrant or certificate to the surveyor of the district in which he intends the obtaining a grant; and at the same time shall produce and deliver a location of the land, &e., and the surveyor shall receive the said warrant or certificate and location, and shall immediately enter said location in a book, &c., &c.; and * the said surveyor shall, as soon as may be after receiving said location, cause to be surveyed the lands described therein, paying due regard to the calls of said location, &c., &c.,. and shall, within three months at furthest, after such survey is made, record the plats and certificates thereof at full length, in a hound book, &c. § 42. And in making the suryey, it shall be the duty of the surveyor to run, and cause each and every line thereof to be plainly and distinctly marked the whole length thereof. And it shall be the duty of the person for whom any such survey is to be made, to attend such surveyor in person, or cause some other to attend him at the time of making such survey, and mark the line as above directed.
Under these sections of 1807, Kandolph made his entry in 1810, making thereby, as he says, a contract with the State, the obligations whereof she has impaired by her act of 1813, ch. 83, §§ 1, 2, and 4.
The correctness of this defense must depend solely upon the true construction of the above sections; for the defendant is precluded from taking a view of his claim at any period anterior thereto, or of appealing to any regulation of office, practice of surveyors, and peculiar rights incident to the claim, which might have been applicable at such prior period. These were virtually done away by the compact and the laws to give it effect, and also virtually abandoned by the defendant in taking the benefit of these laws, and accepting the right derived under them, in lieu of his former right.
Two prominent features are presented upon these sections; the speedy satisfaction of the claim, and the cooperation of the claimant. § 40, in express terms, says the claim is to be surveyed as soon as may be; and the nature of the case sufficiently proves that it was the understanding and intention * of the Legislature, that not only the survey, but that all other requisites neces *731 sary to complete the title should be executed without delay. These claims, at least a very considerable portion of them, had, previous to 1807, been of 20 years’ standing and upwards. Many of the original claimants, during the pursuit of their claims through this period, had yielded to time and were no more. Their claims were in the hands of their representatives, and in some cases, after one or more removes, justice, propriety, and even feeling were arrayed on the side of the holder, to have the business dispatched and satisfaction made. On the part of the State, not only justice on her side required' concurrence with the wishes of the holder, but interest and policy also, that the capital of the State might be brought into action, and her resources enlarged by the cultivation of the soil, which these impending claims continued a desert, until distribution made by their satisfaction. No doubt, therefore, can be entertained on this point. Equally clear is it, that the claimant should cooperate in expediting the business and forwarding the survey. By the forty-second section it is expressly made his duty to attend at the making the survey, and to mark the lines. The Legislature foresaw the difficulty and loss of time that must certainly take place, in applying the locations by the surveyor, and therefore made the express provision of this section to guard against the mischief. And the act of the enterer must necessarily be the first act; a contrary construction would be altogether unwarrantable, and in practice physically impossible. The cooperation of the enterer is expressly directed. Now, between the principal surveyor on the one part, and the enterer on the other, can it, when considered, really be a question who is to do the first act towards the survey, to wit, make the application to fix the time, &c. ? Can the surveyor make the application to perhaps many hundred enterers, * the greater part of whose residences are unknown to him, many of them non-residents in his district, and even non-residents in the State ? His public functions forbid his personal absence from his office, to make such application, and the official emoluments would not bear the expense of employing the agency of others ; they would not even bear his own travelling expenses, if his time could be so applied. On the part of the enterer, these difficulties do not occur; a duty subdivided and branched out into so many hundred parts which, when imposed on an individual, becomes an intolerable burden, or impossible, but when so shared is not felt. Lex non cogit ad impossihilia.
*732 On examination into the practice at the offices it is found, as was expected, that the surveyor never attempts to survey till called upon by the party for this purpose, who either by himself or some other person points out the ground, marks, &c., &c. The policy of the State of Tennessee manifested in these acts, being obstructed by the tardiness of the enterers in not complying with their requisitions, produced the interference of the act complained of, which was made in aid of that policy, and in substance enacts that all entries made prior to that act shall be surveyed in one year from the passage thereof, and all entries made thereafter in six months from the (|ate of the entry; and that it shall be the duty of. the,enterers to make application to the surveyor for that purpose within six months. And upon failure, the entries shall be considered as vacant land, and subject to the entry of any other person.
Is this act then unconstitutional ? May it be said to impair the obligation of a contract? We have seen it to be the policy of the State that these claims should be satisfied as soon as possible, and the express declaration of the Legislature in advancement of this policy, that the survey should be made as soon as may * be after making the entry, and that by and with the cooperation of the enterer. Can the defendant then (the en-terer), after a lapse of three years and upwards in this case from the date of his entry, without any step taken by him to comply with his part of the contract, or the requisition of the act of 1807, § 42, without any act of cooperation, riot even an application to the surveyor, come forward and say that the contract is infringed by the State in making the provisions of 1813, thus urged by his own delinquency, and superinduced by his own default ? It seems to me he cannot. In 1 Powell on Contracts, 417, this doctrine is laid down, that “ If he who is to be benefited by another’s fulfilling the contract or agreement, is the occasion why it is not carried into execution, the contract or agreement is thereby entirely dissolved, and the party bound discharged from his obligation.” And again, in page 490, “ If he whom it concerns to have my part of the contract fulfilled, is the occasion why it is not, it is the same thing to me as if it were fulfilled.” The defendant in the present case being the party to be principally benefited by the survey, and not having cooperated in making it, he is the occasion himself why it was not executed ; this part, therefore, of the contract is dissolved, and the State released from its obligation.
*733 But it may be said, if the enterer was by law bound to cooperate in mating the survey, had he a reasonable time allowed for this purpose ? The time in this case is measured by the date of the entry in 1810 and the passage of the act of 1813, an allowance far beyond reasonable, as is proved by the general practice of the country, and wholly incompatible with the justice due to other claimants, and the policy of the commonwealth, which is evinced by. the Legislature, when this matter was taken up by them, and acted upon afterwards.
From the view I have taken of this case I have * given every possible weight to the defense, and considered occasionally the entry as if the essence of the contract; which, however, it is not since the compact. By the compact I consider the essence of the contract between the State and the claim holder to be a satisfaction of the claim in land by the former; but what particular land, what identical spot, to be a modification of that satisfaction dependent upon the claimant principally by the acts of his entry, and his cooperation in the survey. By declaring the entry forfeited, or the land comprised in it vacant, the ■ essence and substance of the contract remains untouched; the claimant still remains entitled to the satisfaction of his claim in land, and he has only lost the preference to a particular spot.
Complete acquiescence is admitted in the principle that the Constitution is the paramount law of the land, that it is not competent to the Legislature to act in derogation of this principle, and if they attempt it their acts are void; that the judiciary is the proper power to say whether an act of Assembly oppugns the Constitution or not; that it is a coordinate branch of the government, and the Constitution the rule by which both it and the Legislature are to proceed. Proceeding then by this rule, I cannot say that this act of the Legislature of 1813 is a retrospective law, impairing the obligation of the defendant’s contract in this case.

Let judgment le entered up for the plaintiff.

See King’s Digest, 8009.