HOOVER MOTOR EXP. CO., INC. *et al. v.* RAILROAD & PUBLIC UTILITIES COMMISSION *et al.*

(*Nashville,* December Term, 1952.)

Opinion filed July 17, 1953.

Rehearing Denied October 9, 1953.

JUDSON HARWOOD and CHAS. C. BROWN, JR., both of Nashville, GLENN M. ELLIOTT, of Memphis, CHAS. H. HUDSON, JR., of Nashville, and JAS. W. WRAPE, of Memphis, for Hoover Motor Exp. Co., Inc. and others.

COX, EPPS, MILLER & WELLER, of Johnson City, for E. T. & W. N. C. Transp. Co.

FRANK B. CREEKMORE and JOHN C. BAUGH, both of Knoxville, E. W. HALE, JR., of Memphis, and JOHN J. HOOKER, of Nashville, for Jack C. Robinson, etc.

Mr. Justice Gailor delivered the opinion of the Court.

This controversy rises from a petition filed by Jack C. Robinson, doing business as Robinson Freight Lines, before the Railroad & Public Utilities Commission, to secure certificates of convenience and necessity to license freight haulage over 8 routes of public highways in Tennessee. The petition was resisted by all common carriers already having certificates of convenience and necessity, covering the routes specified in Robinson's petition. We will refer herein to the Robinson Freight Lines as "Robinson," and to those opposing his petition as "the Hoover Group." After a full hearing and the introduction of evidence, the Commission found that "the public convenience and necessity will be promoted by the creation of the proposed service," and granted the petition of Robinson for certificates over the 8 routes.

Thereupon carriers in the Hoover Group filed petitions for certiorari in the Chancery Court of Davidson County,

598

and the writs being granted, the case came on to be heard before the Chancellor.

The first and principal question was the effect of Chapter 261, Public Acts of 1951, effective March 16, 1951, by which Code Section 9014 was amended to provide "In making such findings of fact the Chancellor shall weigh the evidence and determine the facts by the preponderance of the proof." Since the proceeding before the Utilities Commission had been held before the effective date of the Act, though the effective date of the Act was prior to the hearing in the Chancery Court, the Chancellor held that the Act did not apply, and proceeded to consider the writ under the usual procedure for a common law writ of certiorari as such proceeding was regular prior to the amendment of 1951. Robinson's original petition before the Utilities Commission sought certificates of convenience and necessity over 8 routes. The Chancellor found that there was no evidence whatever to support the issuance of certificates over 5 of these routes, but that there was material, substantial evidence to support the issuance over the remaining 3 routes. He, therefore, concluded that the action of the Commission as to the 5 routes not supported by evidence was arbitrary and illegal, but affirmed the issuance of the other 3 certificates.

No appeal was perfected from the action of the Chancellor in annulling the certificates over the 5 routes not supported by evidence, and his action in that regard has become final. As to the other 3 routes, the Hoover Group perfected its appeal to the Court of Appeals, and in substance, that Court held: (1) That the amendment of 1951 being in effect at the time of the hearing in Chancery Court, and being procedural merely, should have guided the Chancellor in his disposition of the case; (2) That though there was material substantial evidence to sup-

port the finding of the Commission as to the 3 routes in controversy, that the evidence strongly "preponderated" against the finding of the Commission that public convenience and necessity would be promoted by issuing certificates to Robinson over those routes; and (3) Modified the decree of the Chancellor, and cancelled in its entirety the order of the Commission granting certificates to Robinson, and dismissed his petition.

Robinson has filed petition for certiorari in this Court, which, after filing a memorandum, we denied, but on petition to rehear, when it developed that a constitutional question was involved, we granted the writ, have heard argument and the case is so before us for disposition.

■ As this Court has repeatedly held, the review before the Chancellor on the writ of certiorari was limited to the review provided by the common law writ, although in strictness no common law writ now exists in Tennessee, and the writ here was that defined by Code Section 8989. *Dunlap* v. *Dixie Greyhound Lines,* 178 Tenn. 532, 160 S. W. (2d) 413; *Tenn. Cartage Co., Inc.,* v. *Pharr,* 184 Tenn. 414, 199 S. W. (2d) 119; *Hoover Motor Express Co., Inc.,* v. *Taylor,* 185 Tenn. 88, 203 S. W. (2d) 366. By Code Section 8989, review is limited to a determination whether the "inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally".

"The next contention is that petitioner has the right to have the writ of certiorari to the end that he may have the matter heard or retried upon the merits. * * * The answer to this is that it is only where the writ of certiorari lies as a substitute for an appeal or a writ of error, or, possibly, instead of audita querela, that the writ will operate to give to the petitioner a new trial upon the merits." (Lur-

ton, J.) *Tomlinson* v. *Board of Equalization,* 88 Tenn. 1, 11, 12 S. W. 414, 416, 6 L. R. A. 207.

In a number of cases, for example, *Savage Co.* v. *City of Knoxville,* 167 Tenn. 642, 72 S. W. (2d) 1057; *Anderson* v. *City of Memphis,* 167 Tenn. 648, 72 S. W. (2d) 1059; *McKee* v. *Board of Elections,* 173 Tenn. 269, 276, 117 S. W. (2d) 752, this Court has expressly held that the distinction between the common law writ of certiorari, Code Section 8989, and the statutory writ in lieu of appeal, Code Section 8990, was not destroyed by the enactment of Code Sections 9008-9018, and that those sections did not operate to enlarge the scope of review permissible to the judicial branch of the Government under the common law writ of certiorari. In defining the effect of these Code Sections, Judge Green said:

"Section 9008 of the Code neither enlarges nor diminishes the scope of review by certiorari. It only prescribes procedure. *Anderson* v. [*City of*] *Memphis,* 167 Tenn. 648, 72 S. W. (2d) 1059; *Prosterman* v. [*Tennessee State*] *Board of Dental Examiners,* 168 Tenn. 16, 73 S. W. (2d) 687.'' *McKee* v. *Board of Elections,* 173 Tenn. 269, 274, 117 S. W. (2d) 752, 754.

Code Section 9008 affords relief only if the inferior board or commission is or has acted "arbitrarily, fraudulently, or illegally". *Richardson* v. *Reese,* 165 Tenn. 661, 57 S. W. (2d) 797, 800.

" 'Certiorari' at common law performed the function of aid to a review and supervision of the proceedings of inferior boards and tribunals by a superior tribunal, not taking the place of appeal or writ of error, but bringing up the entire record in order to a determination whether there had been an absence or excess of jurisdiction, or a failure to

proceed according to the essential requirements of the law." *Conners* v. *City of Knoxville*, 136 Tenn. 428, 432, 189 S. W. 870, 871.

"Applicable to the common-law writ is this excerpt:

" 'It must be borne in mind that the functions of certiorari are simply to ascertain the validity of proceedings before a court of justice, either on the charge of their invalidity, because the essential forms of the law have not been observed, or on that of the want of jurisdiction in the court entertaining them. The writ has never been employed to inquire into the correctness of the judgment rendered where the court had jurisdiction, and was therefore competent. Hence it has been held that the supervisory jurisdiction of the court on a certiorari must be restricted to an examination into the external validity of the proceedings had in the lower court. It cannot be exercised to review the judgment as to its intrinsic correctness, either on the law or on the facts of the case. The supervisory powers of the court should not be confounded with its appellate jurisdiction.' 5 R.C.L., 251; *State [ex rel. Matranga]* v. *Judge*, 42 La. Ann. 1089, 8 So. 277, 10 L. R. A. 248." *State ex rel. McMorrough* v. *Hunt,* 137 Tenn. 243, 250-251, 192 S. W. 931, 933.

By its unanimous opinion *In re Cumberland Power Co.*, 147 Tenn. 504, 249 S. W. 818, this Court expressly held unconstitutional Chapter 107, Public Acts of 1921, by which the Legislature undertook to give a right of appeal to this Court from the Railroad & Public Utilities Commission.

If, as did the Court of Appeals, Chapter 261, Public Acts of 1951, supra, is to be construed as imposing on

the Chancellor a hearing on appeal, or on a certiorari in lieu of appeal, such construction would render the Act unconstitutional for the reasons stated in the opinion *In re Cumberland Power Co.,* supra. By its opinion, the Court of Appeals has undertaken to perform an administrative or legislative function, which is beyond its competency.

Sec. 1, of art. II, of the Constitution of 1870, divides the Government into three distinct and independent departments, and Sec. 2, of art. II, forbids the exercise by one of the function of another department. Definition of the exact limitation of the function of each of the three departments is not undertaken in the Constitution. That definition, as a matter of construction and interpretation of the Constitution, is the highest function of the Judiciary whose construction prevails over any construction or interpretation of the Constitution undertaken either by the Legislature or the Executive.

"This principle is wholly and exclusively American. It is America's original contribution to the science of law." Beveridge, "The Life of John Marshall," Vol. III, p. 142.

"If Congress remains at liberty to give this court appellate jurisdiction, where the constitution has declared their jurisdiction shall be original; and original jurisdiction where the constitution has declared it shall be appellate; the distribution of jurisdiction, made in the constitution, is form without substance." *Marbury* v. *Madison,* 1 Cranch, U. S., 137, 2 L. Ed. 60, 72. Cooley, Constitutional Limitations, Vol. 1, 8th ed., Chapter 7, et aliunde.

This Court has frequently declared its adoption of the principle expounded in *Marbury* v. *Madison,* supra, and

has declared that its interpretation of the State Constitution is controlling.

"But it is the glory and the boast of our written constitution, that the powers of the law-makers are restricted and defined; and while it is the legitimate and lawful province of the Supreme Judicial Tribunal of the Union to determine the validity of a statute assumed to have been enacted under the authority of the organic law, it is no less the prerogative of the State tribunal to interpret its own State laws, and to pronounce upon their compatibility with the supreme organic law." *Lonas* v. *State,* 50 Tenn. 287, 301-302. *Huntsman's Lessee* v. *Randolph,* 6 Tenn. 263, 271; *Nelson* v. *Allen,* 9 Tenn. 360, 379; *Wright* v. *Cunningham,* 115 Tenn. 445, 91 S. W. 293; *Governor* v. *Porter,* 24 Tenn. 165; *Fisher's Negroes* v. *Dabbs,* 14 Tenn. 119.

This Court has expressly held that the Railroad & Public Utilities Commission is not a Court, *In re Cumberland Power Co.,* supra, that it performs administrative and legislative functions, *Nashville, C. & St. L. RR.* v. *Browning,* 176 Tenn. 245, 140 S. W. (2d) 781, and any different construction by the Legislature of statutes under which the Railroad & Public Utilities Commission operates, would be a nullity and void, since the construction of Sections 1 and 2 of art. II, of the Constitution is exclusively a judicial function. *Fisher's Negroes* v. *Dabbs,* 14 Tenn. 119; *Governor* v. *Porter,* 24 Tenn. 165, 167-168; *Arrington* v. *Cotton,* 60 Tenn. 316, 319; *Erwin* v. *State,* 116 Tenn. 71, 96, 93 S. W. 73.

"From the foregoing it is apparent that the broad general purpose of the acts in question is to confer upon the Railroad and Public Utilities Commission powers and functions which are primarily legislative

and executive, and that the power to hear and determine controversies, the quasi-judicial power, is merely incidental thereto. The proposition that the Legislature intended or attempted to create a court by the acts above referred to and to vest it with the power to make rules, interpret and execute them, cannot be successfully maintained. The Railroad and Public Utilities Commission is authorized to initiate and prosecute its own proceedings before itself; and such proceedings are to be heard, decided, and its determination therein is authorized to be enforced by itself. A tribunal exercising such commingled legislative, executive, and judicial functions, from its very nature cannot be made a court." *In re Cumberland Power Co.,* supra, 147 Tenn. at page 515, 249 S. W. at page 821.

■■ Code Sections 9008-9018, without prior legislative sanction, were enacted as a part of the Code of 1932. So far as their language shows, these sections apply both to the procedure under petitions for the common law writ of certiorari, Code Sec. 8989, and the statutory writ of certiorari, Code Sec. 8990. Chapter 261, Public Acts of 1951, amends Code Sec. 9014 without undertaking to distinguish the effect it may have on the procedure under the common law writ, from that under the statutory writ. For the determination of the present controversy and decision of this case, it is only necessary for us to determine the effect the amendment had on procedure under the common law writ of certiorari. As we have stated above, the common law writ does not bring up for determination, any question except the question whether the inferior board or tribunal (1) has exceeded its jurisdiction, or (2) has acted illegally, arbitrarily or fraudulently. The effect of the amendatory Act was, therefore,

only to require the Chancellor to review the evidence which had been introduced before the Commission, and to determine by a preponderance of the evidence, whether the Commission had acted beyond its jurisdiction, arbitrarily, fraudulently or illegally. Since this was the long established limit of appropriate judicial review under the common law writ, the amendatory Act of 1951 could have no further or greater effect on procedure under the common law writ, whatever may be the effect of the amendment on a proceeding under the statutory writ, Code Sec. 8990.

In the present case, the decision whether certificates of convenience and necessity shall be issued for the use of State highways for hauling freight by a motor carrier, is clearly an administrative function of government. Control and regulation of certain motor carriers were vested in the Railroad and Public Utilities Commission by the Motor Carriers Act, Chapter 119, Public Acts of 1933, Code Supplement, 5501.1-5501.23. By the Act, the Utilities Commission is given the same control over certain motor carriers as it had had theretofore over so-called "utilities" or "corporations affected with a public interest." The Act expressly so provides, Code Supplement, Secs. 5501.15-5501.16. That control is exclusive and final. *McCollum* v. *Southern Bell T. & T. Co.*, 163 Tenn. 277, 280, 43 S. W. (2d) 390. The action of the Commission in giving or withholding certificates of convenience and necessity is an administrative function no different from the action of the Commission in the rate-making power of which Judge Cook, speaking for a unanimous Court, said:

"The courts cannot directly or indirectly exercise the rate-making power * * *." *Lewis* v. *Nashville Gas Co.*, 162 Tenn. 268, 283, 40 S. W. (2d) 409, 414.

"* * * 'That neither the legislative nor the executive branches can constitutionally assign to the judicial any duties but such as are properly judicial, and to be performed in a judicial manner.' " *Muskrat* v. *U. S.*, 219 U. S. 346, 348, 31 S. Ct. 250, 252, 55 L. Ed. 246, 248; *Hayburn's Case*, 2 Dall., U. S., 409, 1 L. Ed. 436.

▉ Under the common law writ of certiorari, questions of law only will be reviewed by the Courts. The Law of Certiorari by George E. Harris, Sec. 48, Sec. 59, Sec. 82; 42 Am. Jur., Public Administrative Law, p. 622, Sec. 210. An order of the Commission which is not supported by any evidence is arbitrary and void, and therefore, within judicial power to quash under the common law writ of certiorari. 42 Am. Jur., Public Administrative Law, Sec. 150, p. 496. The question whether there is any material evidence to support the finding and order of the Commission is, therefore, a matter of law for the Court upon review, and to ascertain that, whether there is any material evidence, is the limited purpose for which the evidence introduced before the Commission is admissible in the Court granting the writ of common law certiorari. Harris, Certiorari, supra; *Alton R. Co.* v. *U. S.*, 315 U. S. 15, 62 S. Ct. 432, 86 L. Ed. 586; *U. S.* v. *Morgan*, 313 U. S. 409, 61 S. Ct. 999, 85 L. Ed. 1429; *Interstate Commerce Commission* v. *Louisville & N. R. Co.*, 227 U. S. 88, 33 S. Ct. 185, 57 L. Ed. 431.

▉ Under Code Sec. 9014, it is provided that additional evidence may be introduced in the Court granting the writ of certiorari, but on the hearing on the common law writ, that evidence is limited to the question presented, namely, whether the Board or Commission has exceeded its jurisdiction or acted fraudulently, illegally or arbitrarily.

"Under this provision, if the petition be for the common-law writ of certiorari, its averments of illegal action or usurpation of authority by the commission or board may be supported or refuted by additional evidence; and if the writ granted be the statutory writ, in lieu of appeal, the hearing is de novo, and either party is free to support his contentions by evidence bearing on the issues presented." *Anderson* v. *City of Memphis,* 167 Tenn. 648, 653, 72 S. W. (2d) 1059, 1060.

 Since the Tennessee statutes creating the Public Utilities Commission were modeled on the Federal statutes, Federal decisions are particularly persuasive in resolving questions arising under those statutes. *Oman* v. *Tennessee Cent. Ry. Co.,* 7 Tenn. App. 141; *Cleveland C., C. & St. L. R. 'Co.* v. *Southern Coal & Coke 'Co.,* 147 Tenn. 433, 441, 248 S. W. 297.

 The weight to be given particular evidence is a matter peculiarly within the province of the trier of the facts, unhampered by mechanical rules governing the weight or effect of evidence. 42 Am. Jur., Public Administrative Law, Sec. 132, p. 467.

"To consider the weight of the evidence is beyond our province." (Brandeis, J.) *Western Papermakers Chemical Co.* v. *U. S. of America,* 271 U. S. 268, 46 S. Ct. 500, 501, 70 L. Ed. 941, 943.

The judgment of the Court of Appeals is reversed, and with the foregoing explanation, the decree of the Chancellor is affirmed at the cost of the respondents.

TOMLINSON, Justice, dissents.

TOMLINSON, Justice (dissenting).

The majority opinion is so far reaching in its consequences that it would, I think, be a disrespect upon my part to that scholarly opinion and to the extensive learn-

ing and experience of my Associates concurring therein should I fail to record the reasons which compel me to a reluctant dissent.

The whole case turns upon the effect, if any, to be given Chapter 261 of the Public Acts of 1951 amending Code Section 9014. As that section stood prior to the enactment of the 1951 Act, the Chancellor was directed, in reviewing the fact findings of an administrative board, to ''reduce his findings of fact * * * to writing and make them parts of the record.'' The 1951 Act proposes to amend this provision of Section 9014 so as to provide that ''In making such findings of fact the Chancellor shall weigh the evidence and determine the facts by the preponderance of the proof.''

Prior to the enactment of the 1951 Act the fact findings of the Railroad and Public Utilities Commission were not disturbed by the Courts in reviewing orders of the Commission, if such fact findings were supported by any substantial evidence. Throughout the hearing of this case in the Chancery Court, and in the Court of Appeals, and in this Court, until after the granting of the petition to rehear, it seems to have been the opinion of all the lawyers, the Chancellor, all members of the Court of Appeals and all members of this Court that the effect of the 1951 Act is to change the procedure so as to require the Chancellor, when proceeding under Sections 9008-9018 of the Code, to determine whether the fact findings of the Railroad and Public Utilities Commission are supported, *not by substantial evidence*, as theretofore, but by a preponderance of the evidence. This fact is mentioned only because such heretofore unanimous construction of the Act strongly supports the thought that such must be its natural construction. It should be

added that the Chancellor declined to give the Act effect because it was enacted after this suit was started.

However, in considering the merits of the petition to rehear, it has been concluded by the majority of this Court, and so expressed in the majority opinion, that the proper construction of the 1951 Act is to require the Court, in reviewing fact conclusions of the Public Utilities Commission "to determine by a preponderance of the evidence, whether the Commission had acted beyond its jurisdiction, arbitrarily, fraudulently or illegally." That is, according to the majority opinion, the 1951 Act requires the Court, in reviewing a fact conclusion of the Public Utilities Commission, to determine by a preponderance of the evidence whether such fact conclusion is supported by any substantial evidence. Such a construction, as I see it, of the 1951 Act is to reduce it to an absurdity in that it proposes to require the Court to do that which is impossible.

Testing that immediately above said by the fact issue in this case, the statute directs the Railroad and Public Utilities Commission to determine "*from the evidence*" (emphasis supplied) whether the public convenience and necessity will be promoted by the issuance of the certificate of public convenience and necessity for which Robinson has applied. Code Section 5501.5(a). Several witnesses testified that public convenience and necessity would be promoted. Now, this testimony is substantial evidence of that fact, no matter how many witnesses testify to the contrary. It is, therefore, impossible for the Court to determine by the preponderance of the evidence that there is no substantial evidence. There is substantial evidence, regardless of how great the preponderance to the contrary is.

.Thus, I am not able to rid my mind of the conviction that the proper construction of the 1951 Act is that it requires the Chancellor in proceedings under Sections 9008-9018 of the Code to determine whether the fact conclusion of an administrative board or commission is supported by a preponderance of the evidence. I think that is what the Legislature intended.

But the majority opinion says that the construction just stated "would render the Act unconstitutional for the reasons stated in the opinion *In re Cumberland Power Co.*, supra", 147 Tenn. 504, 249 S. W. 818, in that such construction requires the Court "to perform an administrative or legislative function, which is beyond its competency." As authority for the last statement in quotations, the majority opinion says "Sec. 2, of Art. II, forbids the exercise by one (of the three departments of State) of the function of another department."

This holding of the majority opinion requires consideration of three questions, to wit: (A). What does the case of *In re Cumberland Power Company*, supra, decide? (B). What is the function which the 1951 Act purports to require of the Court? (C). Does Section 2 of Article II "forbid(s) the exercise by one (of the three departments of State) of the function of another department", as stated in the majority opinion?

, (A). In the case of *In re Cumberland Power Company*, supra, the statute provided for appeal directly to our Supreme Court from the orders of the Railroad and Public Utilities Commission. This Court held that act unconstitutional, because appeals may come to the Supreme Court only from orders or decrees of a *court*. The Railroad and Public Utilities Commission is not a Court. It is an administrative body. Hence the statute undertaking to allow an appeal directly from the order of that

administrative body to this Court was held unconstitutional.

In so far as I am able to see, the question decided in *Cumberland Power Company* case, supra, is not relevant to the question with which we are here concerned. As a matter of fact, every board or commission functioning under the laws of this State whose orders are reviewed by the Chancery or Circuit Court when proceeding under Code Sections 9008-9018 is an administrative board or commission. The question is whether such administrative board or commission in performing its duties and powers did at any stage of the proceedings exercise a judicial function in reaching the conclusion sought to be reviewed. If so, the Court in reviewing the commission's exercise of such judicial function is likewise exercising a judicial function. *Bouldin* v. *Lockhart*, 62 Tenn. 262, 269.

(B). What is the function which the 1951 Act purports to require of the Court? Is it an administrative function? Section 9014 provides that the Chancellor shall hear the case "on the proof" before the Commission and "such other evidence as either party may desire to introduce" and "shall reduce his findings of fact and conclusions of law to writing and make them parts of the record." Then comes the 1951 amendment providing that "the Chancellor shall weigh the evidence and determine the facts by the preponderance of the proof." So it is that the function required of the Chancellor or Circuit Court by the 1951 Act is that in reviewing a Board's or Commission's conclusion of fact the Chancellor or the Circuit Court shall weigh the evidence and determine the question "by the preponderance of the proof." Is that a non judicial function?

612

Weighing evidence and determining questions of fact by the preponderance thereof has always heretofore been regarded as a judicial function. The Circuit Judge in every non-jury case which he hears, and in many others, and the Chancellor in the cases heard by him on oral evidence or by depositions exercises that function daily. It has never been suggested, in so far as I am aware, that the exercise of such a function is not judicial in nature. Yet, in effect, the able majority opinion so holds,—necessarily.

To go further and apply the 1951 Act to the question of fact before the Railroad and Utilities Commission in this case, we find that this Commission is required to determine "from the evidence" whether the public convenience will be promoted by the issuance of the certificate for which Robinson has applied. The 1951 Act merely requires the Chancellor to decide whether the preponderance of the evidence supports the Commission's conclusion "from the evidence" that the certificate should be issued. This seems to me to be the exercise by the Chancellor of a judicial function.

It is argued in behalf of Robinson that the grant of such a review to the Courts destroys the common law writ of certiorari. This common law writ is secured by Section 10 of Article VI of our Constitution. While the relief afforded by it cannot be taken away from the people, it being guaranteed by the Constitution, the quantity and quality of relief may be increased, since the Constitution does not prevent the Legislature from broadening the scope of the writ. *Duggan* v. *McKinney,* 15 Tenn. 21, 22-23. The legislature, in providing that the Court in reviewing a fact conclusion of an administrative board shall determine the question by the preponderance of the evidence rather than by the question

of whether the Board's conclusion is supported by material evidence, is merely to broaden the scope of the writ in proceedings under Sections 9008-9018 of the Code.

It is a mistake, in my judgment, to say that the 1951 Act, construed as I construe it, converts the Court into a rate making body. If the statute provides that the Railroad and Public Utilities Commission shall determine "from the evidence" what rate shall be charged for a given service, and rate experts testify upon this question of fact, the Court is not exercising a rate making function in considering the evidence of these experts for the purpose of determining where the preponderance of the evidence is. The Circuit Court or the Chancellor may review the testimony of experts in the field of science, medicine, or other professional field for the purpose of ascertaining where the preponderance of the evidence is, and has done so from time immemorial. For identically the same reason, it seems to me to necessarily follow that the Court is merely exercising a judicial function in reviewing the testimony of experts in rate making for the purpose of ascertaining where the preponderance of the evidence is.

It is a mistake, I think, to cite *Tomlinson* v. *Board of Equalization*, 88 Tenn. 1, 12 S. W. 414, 6 L. R. A. 207, and that line of cases, in support of the proposition that the Court may not weigh the evidence for the purpose of determining where the preponderance is. In the Tomlinson case the tax board was authorized to make assessments of real estate based upon its own opinion, rather than on an opinion formed from testimony of witnesses. Of course, in such a situation the Court would be substituting its opinion for that of the Tax Board were it permitted to review such an order. No judicial function was exercised because no evidence was weighed. The

1951 Act makes no such provision. It merely requires the Chancellor to determine "on the proof" introduced before the administrative board, and upon such additional proof as may be presented to the Chancellor as to where the preponderance of the evidence lies upon the question of fact decided upon evidence by the board or commission.

(C). The majority opinion, after calling attention to the fact that our state government is divided into three independent departments, then states that "Sec. 2, of Art. II, forbids the exercise by one of the function of another department." This provision of the Constitution is not so absolute as that. Its provision is that neither department shall exercise a power properly belonging to either of the others, *"except in the cases herein directed or permitted"*, (emphasis supplied) meaning, except in cases directed or permitted by other provisions of our Constitution. *Richardson* v. *Young,* 122 Tenn. 471, 491, 125 S. W. 664. So, this exception requires an examination of our Constitution for the purpose of determining whether it contains a provision which permits the Legislature to vest in the Courts the power and duty of determining whether a fact conclusion of an administrative board or commission is supported by the preponderance of the proof, that being the only requirement of the 1951 Act.

Article VI, Section 8 of our Constitution provides that the "Jurisdiction of the Circuit, Chancery, and other inferior courts, shall be as now established by law, until changed by the Legislature." *Jackson* v. *Nimmo,* 71 Tenn. 597, 606, in construing this clause of the Constitution, said that a "change of jurisdiction, that is, enlargement or diminution of the (ir) sphere of action (of such

Circuit, Chancery or other inferior Courts) was to be left, and was authorized to be made by, the legislature''.

To provide, as Chapter 261 of the Public Acts of 1951 does, (as I construe the Act) that hereafter Chancery Courts must act in accordance with the preponderance of the evidence in reviewing a fact conclusion of any administrative board or commission when proceeding under Sections 9008-9018 ''unless otherwise provided'' is only to provide an ''enlargement—of their (Chancery Courts') sphere of action'' under what were the proceedings under the common law writ as to a matter which has always been considered a proper function of courts, to wit, the function of weighing the evidence introduced in the trial of lawsuits. To me, then, it appears necessary to conclude that in the enactment of the 1951 Act the legislature only did that which the Constitution permits by its Article VI, Section 8.

Perhaps it is not amiss to say that I do not think that the statements of the United States Supreme Court referred to in the majority opinion are of any assistance because our question is whether a State statute violates the provisions of our State Constitution. Of course, we must look to the language of our statute and of our Constitution in deciding that question.

For the reasons stated, I think the opinion of the Court of Appeals should have been affirmed.

MEMORANDUM ON TWO PETITIONS TO REHEAR.

GAILOR, Justice.

The Hoover group has filed a petition to rehear criticising the opinion of this Court filed on July 17, 1953, because in it we pretermitted a specific finding that the certificate of convenience and necessity granted Robinson

by the Railroad & Public Utilities Commission was not supported by any material and substantial evidence. The subject matter of this petition for rehearing is entirely proper and within the scope of that pleading as it is permitted by our Rule 32, 185 Tenn. 879.

It is argued that although a number of the 25 witnesses introduced by Robinson in support of his petition, testified "that there is need for additional service" (Pet. p. 15) that the testimony of all of these witnesses was nullified by their cross-examination. Having testified that the additional service was convenient and necessary, the cross-examination of these witnesses merely affected the weight and credibility of the testimony, and was for the final and exclusive determination of the Commissioners as triers of the facts.

"Convenience" and "necessity" are relative terms and the statute fixes no norm to guide the Commission in determining the degree of adequacy which public trucking service shall attain. Furthermore, being an administrative board and not a Court, the Utilities Commission has never been held by this Court to be restricted by the technical common law rules of evidence in determining purely administrative questions, and we have held that the grant or refusal of a license to use public highways in commerce is purely an administrative question.

Section 10 of Chapter 162 of the Public Acts of 1953, which was not in force at the time of this hearing before the Commission, recognizes this rule of law and crystallizes it by statute (42 Am. Jur., Public Administrative Law, Sec. 129, p. 460, et seq.; Stason Cases and Other Materials on Administrative Tribunals, p. 400, et seq.; 124 A. L. R., 1000).

In his opinion, the Chancellor specifically found that there was such material and substantial evidence to

support the grant of the three certificates by the Commission. The Court of Appeals agreed with the Chancellor that there was such material, substantial evidence, but decided that it was not the preponderance of the evidence. In the petition for rehearing as quoted above, the petitioner agrees that there was on direct examination, such material, substantial evidence, but insists that by cross-examination and the application of the strict common law rules of evidence, such evidence should be elided and disregarded. For the reasons above stated, we do not agree with this conclusion. We find and hold that Robinson's own testimony, supported as it was in part, by the testimony of his 25 witnesses, was material and substantial evidence upon which the Commission was justified in issuing the certificates of convenience and necessity in this case. The petition for rehearing filed by the Hoover group is, accordingly, denied.

On behalf of E. T. & W. N. C. Transportation Company, a lengthy re-argument with a wealth of authority, has been filed, in which disagreement with the conclusions reached in our opinion of July 17, 1953, is set out at length and in detail. This document is in no proper sense, a petition for rehearing.

"The office of a petition to rehear is to call the attention of the court to matters overlooked, not to those things which the counsel supposes were improperly decided after full consideration." *Louisville & N. Railroad* v. *United States Fidelity & Guaranty Co.,* 125 Tenn. 658, 691, 148 S. W. 671, 680.

"As every member of this Court came directly from the bar to the bench, we have not so far forgotten our feelings as lawyers, as not to sympathize fully, with the zeal and earnestness of counsel, and to remember that a true lawyer will use every honor-

able exertion, and spare no labor or pains, in behalf of his client. But while this is so, we would respectfully suggest to the members of the bar, that after a cause has been once considered, and an opinion pronounced, it is to be regarded as the deliberate judgment of the entire Court, and we should not be called upon to reconsider it, unless counsel can clearly show some oversight or omission, or bring to the notice of the Court some new matter, really important, which was not before considered." *Andrews* v. *Crenshaw,* 51 Tenn. 151, 152.

All the authorities discussed in this petition were argued by counsel at the hearing, or cited in briefs filed before and after the argument, and carefully weighed by the Court prior to a final decision of this case. That our final decision was reached only after a thorough and careful study of the many close questions presented, is evidenced from the long history of the case in this Court. We first denied certiorari, filing a lengthy memorandum, stating our reasons for that course. Thereafter, when petition to rehear our denial of the writ was filed, certain members of the Court decided that Chapter 261, Public Acts of 1951, Code, Section 9014, had been given an unconstitutional construction by the Court of Appeals. Accordingly, we granted the writ, heard elaborate argument and permitted the filing of additional briefs. After full consideration and conference of all members of the Court, the opinion of July 17, 1953, was announced. The many interesting questions presented will always be close, but they must be decided.

No doubt, because of the use of *In re Cumberland Power Co.,* 147 Tenn. 504, 249 S. W. 818, in our former opinion, counsel insists that this case was overruled, or at least weakened by the opinion of this Court in *Ken-*

*tucky-Tennessee Light & Power Co.* v. *Dunlap*, 181 Tenn. 105, but this is an erroneous conclusion. *In re Cumberland Power Co.*, supra, was not mentioned in the opinion of *Kentucky-Tennessee Light & Power Co.* v. *Dunlap*, supra, and the only questions decided by the Court in that case were: (1) The illegality of the hearing before the Railroad & Public Utilities Commission; (2) The lack of jurisdiction of the Chancery Court of Davidson County. Both these questions are within the legitimate scope of review under the common law writ of certiorari, which was the writ made and granted by the bill or petition filed in the Chancery Court of Davidson County. We hold that the force and validity of the opinions of this Court in *In re Cumberland Power Co.*, supra; *Lewis* v. *Nashville Gas & Heating Co.*, 162 Tenn. 268, 40 S. W. (2d) 409, and *McCollum* v. *Southern Bell T. & T. Co.*, 163 Tenn. 277, 43 S. W. (2d) 390, were not weakened or modified by any subsequent opinion of the Court.

 We re-affirm our holding of July 17, 1953, that an order of the Railroad & Public Utilities Commission granting or refusing a certificate of convenience and necessity, is reviewable by the Courts only under the common law writ of certiorari, Code Sec. 8989; that Code Secs. 9008-9018, apply alike to proceedings under petitions for the common law writ, Code Sec. 8989, and the statutory writ, Code Sec. 8990; that Chapter 261, Public Acts of 1951, amending Code Sec. 9014, applies alike to common law writs and statutory writs, and that said Chapter may be given a constitutional construction. *Wilson* v. *State*, 143 Tenn. 55, 224 S. W. 168; *Turner* v. *Eslick*, 146 Tenn. 236, 240 S. W. 786; *Jones* v. *Coal Creek Mining & Mfg. Co.*, 133 Tenn. 159, 180 S. W. 179.

We further hold that as the statute was applied by the

Court of Appeals, the Act was given an unconstitutional construction.

Our former judgment is affirmed, and both petitions for rehearing are denied.