## IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| **RUDY HOLMES,** | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | **Shelby Circuit No. 52789 T.D.** |
| | ) | |
| **VS.** | ) | **Appeal No. 02A01-9706-CV-00115** |
| | ) | |
| **SHERIFF JACK OWENS, et al,** | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

FILED

February 23, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE JAMES E. SWEARENGEN, JUDGE

**ALAN BRYANT CHAMBERS**
Memphis, Tennessee
Attorney for Appellant

**BRIAN L. KUHN**
Memphis, Tennessee
Attorney for Appellees

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

This is an appeal from a decision of the Circuit Court at Shelby County, Tennessee,

to sustain a discharge of Plaintiff, Rudy Holmes ("Deputy Holmes"), affirmed by the Shelby County Civil Service Merit Board, taken pursuant to the Shelby County Civil Service Merit Act. For reasons stated hereinafter, we affirm the judgment of the trial court.

## Facts and Procedural History

Deputy Holmes is a former deputy sheriff with the Shelby County Sheriff's Department working in the Metro Narcotic Unit. As such, he was authorized to make undercover buys as a Metro Narcotics officer. Deputies in the Metro Narcotics units, including Deputy Holmes, were directed by policy never to taste drugs in the process of an undercover buy. Deputy Holmes did taste the drugs in violation of Sheriff's Department policy. In fact, Deputy Holmes tasted cocaine in violation of said policy even in the Sheriff's office and not on the streets. Sheriff Jack Owens decided to conduct a general search of the narcotics officers within the Shelby County Sheriff's Department. A general search was organized on May 4, 1989. As a part of the search, a drug screening test was performed on Deputy Holmes. The test resulted in a finding of large amounts of cocaine in his system. The standard of the lower limit of cocaine metabolite is 150 anigrams per mil. The level of cocaine found in Deputy Holmes system was 18,000 anigrams per mil.

Deputy Holmes was discharged on May 12, 1989. On May 15, 1989, Officer Holmes appealed this discharge to the Shelby County Civil Service Merit Board. On November 16, 1989, the Civil Service Board conducted a hearing, and on December 8, 1989, published a decision affirming Deputy Holmes' discharge.

On February 1, 1990, Deputy Holmes filed a petition for statutory appeal and for the issuance of writs of common law and statutory *certiorari* claiming that the decision of the Civil Service Board was predicated upon evidence obtained contrary to the Fourth Amendment of the Constitution of the United States and Art. 1 § 7 of the Constitution of Tennessee. Defendants/Appellees, Sheriff Jack Owens, the Shelby County Sheriff's Department, and the Civil Service Merit Board of Shelby County, Tennessee ("Appellees"), filed an answer on February 27, 1990, denying the violations of Deputy Holmes'

2

constitutional rights and contending that the evidence was sufficient to justify the actions taken. This cause of action was initially filed on February 14, 1990, in the Chancery Court of Shelby County, Tennessee. The matter, however, was transferred to the Circuit Court and heard on April 24, 1995. At the conclusion of the hearing, the court affirmed the decision of the Civil Service Board and dismissed the petition for certiorari. The court, however, reserved the decision of whether or not there was a claim under 42 U.S.C. § 1983 due to the allegations and/or proof of the Plaintiff that there was a violation of the Tennessee constitutional provision. The court further requested the parties to issue supplemental briefs on the issue. Appellees filed their supplemental memorandum on this issue on May 12, 1995. Deputy Holmes did not file a response until August 17, 1995, wherein he agreed to a partial judgment filed in this matter on November 9, 1995.

On January 25, 1996, the trial court issued a letter stating that it found that there was a violation of Deputy Holmes rights under the Constitution of Tennessee. The trial court did not hold that this violation would give rise to a 42 U.S.C. § 1983 claim. The trial court requested that counsel for Deputy Holmes draft an order reflecting this decision. Instead of drafting such an order, Deputy Holmes filed a motion for a new trial, to alter or amend the judgment, and for reconsideration of the court's decision. This was filed on February 22, 1996. This motion was argued an April 19, 1996, at the conclusion of which the trial court requested a supplemental memorandum be filed on whether there was any authority for the trial court to subtract evidence from the hearing held before the Civil Service Merit Board. On November 15, 1996, Deputy Holmes filed what was styled "Appellant's Motion for Ruling, Findings of Fact, and Conclusions of Law." This motion beseeched the trial court to return to the decision of the court that was made some two and a half years earlier on April 24, 1995 (entered November 9, 1995), in order to get the court to reverse its decision affirming the Civil Service Merit Board's actions. The argument on this motion was heard on March 7, 1997. The trial court again sustained the decision of the Civil Service Merit Board, dismissed the petitions for *certiorari*, and ruled that Deputy Holmes had sustained a violation of his Tennessee constitutional rights under Article 1 § 7, that Deputy Holmes had not sustained any violations of his federal constitutional or

3

statutory rights, and that Deputy Holmes did not have a 42 U.S.C. § 1983 cause of action under any Tennessee constitutional violations because of the lack of federal constitutional or federal statutory violations. This appeal ensued.

On appeal, the sole issue before this court is whether this court should apply the exclusionary rule to evidence used in a Civil Service Merit Board hearing concerning the discharge of a deputy sheriff.

## Law and Discussion

Common law writ of certiorari is provided for in T.C.A. § 27-8-101:

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

Review under the common law writ is limited to whether the "inferior board or tribunal (1) has exceeded its jurisdiction, or (2) has acted illegally, arbitrarily, or fraudulently." *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990)(quoting *Hoover Motor Exp. Co. v. Railroad and Public Utilities Commission*, 195 Tenn. 593, 604, 261 S.W.2d 233, 238 (Tenn 1953)). This Court's primary resolve is to refrain from substituting its judgment for that of the local governmental body. *McCallen*, 786 S.W.2d, at 641. An action should be invalidated only if it constitutes an abuse of discretion. If any possible reason exists to justify the action, such action should be upheld. Both legislative and administrative decisions are presumed to be valid and a heavy burden of proof rests upon the shoulders of the party who challenges the action. An invalidation of the action of an "inferior tribunal, board, or officer exercising judicial functions" should take place only when the decision is clearly illegal, arbitrary, or capricious.

Tennessee Constitution Article 1 Section 7 provides:

> That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or

4

persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

Deputy Holmes has failed to cite us to, and we fail to find, one case in Tennessee dealing with whether the exclusionary rule applies to proceedings which are purely civil in nature. Authority on this issue is scarce in Tennessee. Deputy Holmes does cite us to *Basden v. Lawson*, No. 01-A-019111CH00435, 1992 WL 58501 (Tenn. Ct. App. March 27, 1992). *Basden*, however, dealt with application of the exclusionary rule in a civil setting involving a confiscation or forfeiture which is a penalty for criminal proceedings. The case under submission is purely civil in nature, and, as such, is distinguishable from *Basden*. Because of the lack of direction yielded by Tennessee authorities, we turn our examination to seek guidance elsewhere.

The United States Supreme Court has considered the issue of the applicability of the exclusionary rule in a civil context. In *United States v. Janis*, 428 U.S. 433, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976), the Supreme Court held that evidence illegally seized by state narcotic agents could be used as evidence in a federal tax proceeding. The applicability of *Janis* was later expanded by *Immigration and Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 104 S. Ct. 3479, 82 L. Ed. 2d 778 (1984). In *Lopez-Mendoza*, the Supreme Court was faced with the question of whether evidence obtained unlawfully by the Federal Immigration and Naturalization Service could be used by that same agency in a civil deportation proceeding. In that case, the Court referred to its *Janis* decision as setting forth a framework for deciding in what types of proceedings the application of the exclusionary rule is appropriate. As the *Lopez-Mendoza* Court stated: "The Court recognized in Janis that there is no choice but to weigh the likely social benefits of excluding unlawfully seized evidence against the likely costs."

In the Federal court system, the leading case on whether it is a constitutional violation to have law enforcement officers to undergo drug tests is *National Treasury Employees Union v. Von Raab, Commissioner, United States Custom Service*, 489 U.S.

5

656, 109 S. Ct. 1384, 103 L. Ed. 2d 685 (1989). In *Von Raab*, the United States Custom Service had a program requiring a urinalysis test of service employees seeking transfer or promotion to positions having a direct involvement with drug interdiction and/or requiring the individuals to carry firearms or to deal with classified material. The employees union filed a lawsuit stating that this program was an illegal search and seizure under the Fourth Amendment to the United States Constitution and should not be permitted. The District Court agreed and placed an injunction upon the program. The Court of Appeals vacated the injunction, holding that, although the program effects a search within the meaning of the Fourth Amendment , such searches are reasonable in light of their limited scope and the Service's strong interest in detecting drug use among employees in covered positions. The United States Supreme Court held that where the Government requires its employees to produce urine samples to be analyzed for evidence of illegal drug use, the collection and subsequent chemical analysis of such samples are searches that must meet the reasonableness requirement of the Fourth Amendment. However, because the Service's testing program is not designed to serve ordinary needs of law enforcement -- i.e., the purposes of the program are to deter drug use among those eligible for promotion to sensitive positions and to prevent the promotion of drug users to those positions -- the public interest in the program must be balanced against the individual's privacy concerns implicated by the tests to determine whether a warrant, probable cause, or some other level of individualized suspicion is required in this particular context.

In the case before us, it is readily evident that the Appellees have a compelling interest in ensuring that front-line interdiction personnel such as Deputy Holmes are physically fit, and have a high level of probity and judgment. The state's interest in self-protection could be hopelessly damaged if those authorized with safeguarding it were, because of their own drug use, unsympathetic to their duty of interdicting narcotics. The public interest necessitates effective measures to bar drug users from positions directly involving the interdiction of illegal drugs. Indeed, the almost unique duty of the Metro Narcotics Unit gives the Appellees a compelling interest in ensuring that many of these deputies do not use drugs even off duty, for such use creates risks of bribery and blackmail

6

against which the Government of Tennessee is entitled to guard.  In light of the extraordinary safety and security hazards that would attend the employment of deputies with drug problems to positions that require direct involvement with controlled substances, Appellees' policy of deterring drug users in positions such as these cannot be deemed unreasonable.

Furthermore, public concern likewise demands effective measures to prevent the promotion of drug users to positions that require the individual to carry a firearm.  Narcotics deputies, such as Deputy Holmes, who may use deadly force plainly discharge responsibilities replete with such risks of injury to others that even a momentary lapse of attention can have horrendous ramifications.

Against these genuine public interests we must weigh the interference with individual liberty that is a consequence of requiring these classes of employees to undergo a urinalysis.  As the *Von Raab* court noted:

> The interference with individual privacy that results from the collection of a urine sample for subsequent chemical analysis could be substantial in some circumstances.  We have recognized, however, that the "operational realities of the workplace" may render entirely reasonable certain work-related intrusions by supervisors and co-workers that might be viewed as unreasonable in other contexts.  While these operational realities will rarely affect an employee's expectations of privacy with respect to searches of his person, or of personal effects that the employee may bring to the workplace, it is plain that certain forms of public employment may diminish privacy expectations even with respect to such personal searches.  Employees of the United States Mint, for example, should expect to be subject to certain routine personal searches when they leave the workplace every day.  Similarly, those who join our military or intelligence services may not only be required to give what in other contexts might be viewed as extraordinary assurances of trustworthiness and probity, but also may expect intrusive inquiries into their physical fitness for those special positions.  We think Customs employees who are directly involved in the interdiction of illegal drugs or who are required to carry firearms in the line of duty likewise have a diminished expectation of privacy in respect to the intrusions occasioned by a urine test.  Unlike most private citizens or government employees in general, employees involved in drug interdiction reasonably should expect effective inquiry into their fitness and probity.

We note that counsel for Deputy Holmes argues that the Tennessee Constitution Art. 1 § 7 provides greater protection than does the Fourth Amendment of the United States Constitution.  In both Art. 1 § 7 of the Tennessee Constitution and the Fourth

Amendment of the United States Constitution, the reasonableness of the search is the paramount consideration in determining the validity of that search. Deputy Holmes and his counsel do not dispute, nor can there be any doubt, that drug abuse is one of the most profound problems challenging our society today. We agree with the United States Supreme Court in *Von Raab* and adopt the framework for deciding in what types of proceedings the application of the exclusionary rule is germane as set forth in *Janis* and *Von Raab*, supra. Indeed, we must balance the costs and benefits of excluding the obtained evidence to determine the application of this exclusionary rule in different contexts. In the case under submission, we must balance the Governmental and societal interest in ensuring that front-line interdiction personnel, such as Deputy Holmes, are physically fit and have unimpeachable integrity and judgment with the interference with an individual's liberty interest in being free from unreasonable searches and seizures.

Like *Von Raab*, we think that sheriff deputies within the narcotics unit who are directly involved in the interdiction of illegal drugs or who are required to carry a firearm in the line of duty have a diminished expectation of privacy concerning the intrusions occasioned upon them via a urine test. Employees directly involved with drug interdiction reasonably should expect effective inquiry into their fitness and probity.

In sum, we believe the Appellees' compelling interest in safeguarding society and the public safety outweigh the privacy expectations of deputies who are directly involved with the interdiction of illegal drugs or that require the deputy to carry a firearm. We hold the testing of Deputy Holmes reasonable under Art. 1 § 7 of the Tennessee Constitution and, therefore, find the exclusionary rule inappropriate in this particular context. There is ample material evidence in the record to conclude the drug testing was reasonable in purpose and scope. Also, there is no evidence that the Shelby County Civil Service Merit Board's action in terminating Deputy Holmes was arbitrary or capricious.

The judgment of the trial court is affirmed. Costs of this appeal are taxed to Deputy Holmes, for which execution may issue if necessary.

_____

HIGHERS, J.

CONCUR:

_____

CRAWFORD, P.J., W.S.

_____

LILLARD, J.

9