IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 4, 2000

## WILLIAM P. LIVINGSTON v. STATE OF TENNESSEE BOARD OF PAROLES

**Appeal from the Chancery Court for Davidson County**
**No. 98-2048-II,      Carol L. McCoy, Chancellor**

**No. M1999-01138-COA-R3-CV - Filed July 5, 2001**

Petitioner appeals the trial court's decision to deny his petition for common law writ of certiorari challenging a Board of Paroles decision to revoke his parole and the court's grant of Respondent's motion for summary judgment. Petitioner appeals the order on two grounds, (1) his due process rights were violated by the introduction of inadmissible evidence, and (2) these procedural flaws led to the hearing officer becoming biased and unable to conduct a fair and impartial hearing. For the reasons below, we find both claims without merit and affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J.COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J, joined.

William P. Livingston, Wartburg, Tennessee, Pro Se.

Paul G. Summers, Michael Moore, Pamela S. Lorch, for appellee, State of Tennessee Board of Paroles.

**OPINION**

This is an appeal from the trial court's grant of summary judgment to the Tennessee Board of Paroles and denial of Mr. Livingston's petition for common law writ of certiorari based on his claim that his due process rights were violated during his parole revocation hearing. The facts underlying this appeal are as follows:

Following a conviction and sentence of 21 years for conspiracy to sell, possession of and selling narcotics in 1985, Mr. Livingston was paroled on September 1, 1989. As a condition of his parole, he agreed that he would "not own, possess, or carry any type of deadly weapon (guns, rifles, knives or any illegal weapons)."

In December 1997, pursuant to a warrant issued to search the premises of Mr. Livingston, a .22 caliber high standard pistol and ammunition were found.[1]  A parole revocation hearing was held on February 25, 1998 and Mr. Livingston's parole was revoked as a result.  Because of a procedural error in the first hearing, the Board granted him a second hearing on July 14, 1998.[2]  The hearing officer recommended that Mr. Livingston's parole be revoked, and the Board voted to revoke parole.

I.

Mr. Livingston sought judicial review of the Board's decision to revoke his parole by filing a petition for common law writ of certiorari with the Chancery Court of Davidson County.  The record with which we were presented requires discussion of the procedure applicable to cases initiated by a petition to review a decision of an administrative board or commission, such as the Board of Paroles.

> Anyone who may be aggrieved by any final order or judgment of any board or commission functioning under the laws of this state may have the order reviewed by the courts, where not otherwise specifically provided, in the manner provided by this chapter.

Tenn. Code Ann. § 27-9-101.

As this statute states, the procedure to be used is set out in Tenn. Code Ann. §§ 27-9-101 through -114.  *Fallin v. Knox County Bd. Of Comm'rs,* 656 S.W.2d 338, 341 (Tenn. 1983)*; Fairhaven Corp. v. Tennessee Health Facilities Comm.*, 566 S.W.2d 885, 886 (Tenn. Ct. App. 1976) (citing *Fentress County Beer Bd. v. Cravens*, 209 Tenn. 679, 356 S.W.2d 260 (1962); *Hoover Motor Express Co. v. Railroad & Pub. Util. Comm'n*, 195 Tenn. 593, 261 S.W.2d 233 (1953)) (the procedural framework for review under both the common law and statutory writs appears in Ch. 9 of Title 27); *see also*, Cantrell, *Review of Administrative Decisions by Writ of Certiorari in Tennessee*, 4 Mem. St. Univ. L. Rev 19, 19 (1977) (Chapter 9 of Title 27 provides the procedural framework for review under both the common-law and statutory writs of certiorari but does not affect the availability of either writ).[3]

---

[1]Originally, Mr. Livingston objected to the introduction of evidence of the gun on the basis that the search was illegal, but he does not take issue with the legality of the search or any evidence therefrom on appeal.

[2]Tenn. Code Ann. § 40-28-105(d) allows an inmate whose parole has been revoked to request review by the Board, and such "appellate" review is limited to enumerated grounds, including "significant procedural errors by the hearing official."

[3]Board of Paroles decisions are reviewable through the common law writ of certiorari. *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997) (citations omitted); *Sanders v. Tennessee Bd. of Paroles*, 944 S.W.2d 395, 397 (Tenn. Ct. App. 1996) (citations omitted).

Tennessee Code Annotated § 27-9-102 directs the aggrieved person to file a petition for certiorari in order to seek judicial review. When a petition is filed, the clerk is to give immediate notice to the board or commission involved. Tenn. Code Ann. § 27-9-107. *See also A'La v. Tennessee Dept. of Correction*, 914 S.W.2d 914, 916 (Tenn. Ct. App. 1995) ("[a]fter a petition for writ of certiorari is filed, the clerk is required by statute to immediately send . . . a notice of the filing of said petition and a certified copy thereof to all named defendants.")

The court may require such notice before granting the writ, or may grant the writ without notice. Tenn. Code Ann. § 27-9-108. As used in this and related statutes, the "grant" of the writ is simply an order to the board to send up its record for review. "A writ of certiorari is an order issued by a superior court to compel an inferior tribunal to send up its record for review." *Pigg v. Casteel,* No. 01A01-9807-CH-0038, 1999 WL 166499 at *2 (Tenn. Ct. App. March 29, 1999) (no Tenn. R. App. P. 11 application filed).

> Immediately, **upon the grant of a writ**, the board or commission shall cause to be made, certified and forwarded to such court a complete transcript of the proceedings in the cause, containing also all of the proof submitted before the board or commission.

Tenn. Code Ann. § 27-9-109 (emphasis added).

As this statute suggests and as our courts have explained, the writ is the procedural vehicle used to compel the filing of the record of the lower tribunal, board, or commission whose decision is being challenged. Thus, granting the writ is not a decision on the merits, but is a method by which the merits can be reviewed where the petition states claims which fall within the narrow available scope of judicial review. The purpose of granting the writ is to have the record of the board or other lower tribunal filed so that a reviewing court can determine whether petitioner is entitled to relief. *Puckett v. Broome*, 53 Tenn. App. 663, 667, 385 S.W.2d 762, 764-65 (1964).

> The writ of certiorari lies at common law to review and supervise the proceedings of inferior tribunals . . . and **brings up the entire record** to determine whether there has been an excess or absence of jurisdiction, or failure to proceed according to the essential requirements of the law.

*Clark v. Metropolitan Gov't of Nashville and Davidson County*, 827 S.W.2d 312, 316 (Tenn. Ct. App. 1991) (citations omitted) (emphasis added).

"A petition for writ of certiorari is not leading process, but a statement of fact with a view to obtain an order for issuance of the writs of certiorari and supersedes." *A'La v. Tennessee Dept. of Correction*, 914 S.W.2d at 916 (citing *Kennedy v. Farnsworth*, 22 Tenn. 242, 3 Hum. 242 (1842); 5 Tenn. Jur., *Certiorari* § 33 (1983)). "A common law writ of certiorari provides a vehicle for a court to remove a case from a lower tribunal to determine whether there has been a failure to proceed according to the essential requirements of the law." *Clark*, 827 S.W.2d at 317 (concurring opinion)

3

(citing *Gallatin Beer Regulation Comm'n. v. Ogle*, 185 Tenn. 482, 486, 206 S.W.2d 891, 893 (1948)).

When determining whether to grant the writ and order the filing of the record, the court must examine the petition in light of the narrow scope of review that is available. "The remedy of certiorari is not available as of right, but is granted under unusual or extraordinary circumstances. It is instituted by an application to a court of competent jurisdiction which may or may not authorize the writ." *Clark*, 827 S.W.2d at 316-17. Issuance of the writ is appropriate where grounds exist for a review of the record below. *Id.* (since there was no legitimate cause for the writ of certiorari, it was erroneously granted). *See also*, *Uselton v. Price*, 41 Tenn. App. 134, 142, 292 S.W.2d 788, 792 (1956) (circuit judge did not abuse his discretion in issuing a fiat directing the clerk of the court to issue writs of certiorari and supersedeas on the showing made in the petition; therefore, denial of motion to dismiss was proper.)

"*Certiorari* at common law performed the function of aid to a review and supervision of the proceedings of inferior boards and tribunals by a superior tribunal, not taking the place of appeal or writ of error," and issuance of the writ is for the limited purpose of determining "whether there had been an absence or excess of jurisdiction, or a failure to proceed according to the essential requirements of the law." *Puckett v. Broome*, 53 Tenn. App. at 667, 385 S.W.2d at 764 (quoting *Conners v. (City of) Knoxville*, 136 Tenn. 428, 432, 189 S.W. 870, 871 (1916)).[4]

The writ of certiorari, even if granted, only brings up for review certain limited issues.

It must be borne in mind that the functions of certiorari are simply to ascertain the validity of proceedings before a court of justice, either on the charge of their invalidity, because the essential forms of the law have not been observed, or on that of the want of jurisdiction in the court entertaining them. The writ has never been employed to inquire into the correctness of the judgment rendered where the court had jurisdiction, and was therefore competent. Hence it has been held that the supervisory jurisdiction of the court on a certiorari must be restricted to an examination into the external validity of the proceedings had in the lower court. It cannot be exercised to review the judgment as to its intrinsic correctness, either on the law or on the facts of the case. The supervisory powers of the court should not be confounded with its appellant jurisdiction.

*Hoover Motor Express Co.*, 195 Tenn. at 601, 261 S.W.2d at 236 (citations omitted). Accordingly, the common law writ does not bring up for a determination, any question except the question of

---

[4]In *Puckett v. Broome*, which involved a petition for a writ of certiorari to the court of appeals to review an interlocutory action by a circuit judge, this court stated that the first issue it must address was "whether or not this is a case in which writs of certiorari and supersedeas should be granted." Because the petition presented a situation where there was a genuine question whether the lower court "may have exceeded its jurisdiction and powers and therefore acted illegally," this court determined "that in such a situation this court has jurisdiction to entertain the petition for writs of certiorari and supersedeas." 53 Tenn. App. at 671, 385 S.W.2d at 766.

whether the inferior board or tribunal (1) has exceeded its jurisdiction, or (2) has acted illegally, arbitrarily, or fraudulently. *Id.* at 195 Tenn. at 604, 261 S.W.2d at 238.

The procedural statutes envision an answer by the defendants, even including grounds for demurrer, after the record has been filed. Tenn. Code Ann. § 27-9-110. Generally, then, review of the merits of the petitioner's claim and the defendant board or commission's defense occurs in the context of the record of the proceedings below.

Where, however, the petition itself fails to sufficiently allege administrative action which would authorize judicial review under the common law writ of certiorari, the petition may be dismissed prior to the issuance of the writ.[5] *Boyce v. Williams*, 215 Tenn. 704, 711, 389 S.W.2d 272, 276 (1965) (trial court did not abuse its discretion in dismissing the petition for writ of certiorari because the petitioners had a plain, speedy and adequate remedy, and the statute allowed grant of the writ only "when, in the judgment of the court, there is no other plain, speedy or adequate remedy.");[6] *Buell Grey Motors, Inc. v. Fanburg's Garage*, 202 Tenn. 648, 650, 653, 308 S.W.2d 410, 411, 412 (1957) (trial court properly dismissed a petition for writ of certiorari on the ground that the petition on its face was insufficient because the petitioner did not set out the facts of his case and relied only upon general allegations of violation of the certiorari standard); *Fite v. Board of Paroles*, 925 S.W.2d 543, 545 (Tenn. Ct. App. 1996) (because petitioner did not state any facts that would support a claim that the Board acted illegally, fraudulently, or arbitrarily or that it exceeded its jurisdiction, this court was obligated to find he was not entitled to the writ and affirmed trial court's dismissal even though on different grounds from trial court); *Turner v. Board of Paroles*, 993 S.W.2d 78, 81 (Tenn. Ct. App. 1999) (challenge to intrinsic correctness of board's decision did not state a claim for which relief is available under the common law writ of certiorari and petition properly dismissed); but *see Jennings v. Traughber*, No. 01A01-9509-CH-00390, 1996 WL 93763 at *5 (Tenn. Ct. App. Mar. 6, 1996) (no Tenn. R. App. P. 11 application filed) (dismissal of petition for writ for failure to state a claim reversed because construing the petition liberally and taking all allegations of fact therein as true, petition stated a valid claim that Board of Paroles acted arbitrarily or illegally).

The decision to dismiss a petition for issuance of a writ of certiorari is separate from a decision to deny relief on the basis of the record. As this court recently explained:

---

[5]As in other types of litigation, where the petition fails to state a claim upon which the court can grant relief, it is subject to dismissal upon proper motion. Tenn. R. Civ. P. 12.02 (6); *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992) (the purpose of a Rule 12.02(6) motion is to test the legal sufficiency of the complaint or petition). In the case of a petition for writ of certiorari, a petition which fails to sufficiently allege that an administrative board has exceeded its jurisdiction or has acted illegally, arbitrarily, or fraudulently may be dismissed before the board is ordered to file its record or before the record is filed. *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d at 873 (petitioner alleged facts which, taken as true, merely attack the intrinsic correctness of the board's decision, a question beyond the scope of review, and petition is properly dismissed for failure to state a claim).

[6]In *Boyce*, the court held a hearing on whether the writ should be issued and, after the hearing, dismissed the petition.

5

[In *Conners v. City of Knoxville*, 136 Tenn. 428, 189 S.W. 870 (Tenn. 1916)], the Supreme Court reversed and remanded the case with directions that should have left no doubt as to the course of action to be pursued by the trial court:

> We hold, therefore, that the circuit judge and the Court of Appeals were in error in holding that certiorari was not awardable, and in not quashing the proceeding in the board of commissioners as being in excess of jurisdiction, illegal, and void, if the same shall appeal to be as [the chief of police] states in his petition.
>
> Reversed, and remanded to the circuit court, with direction that the writ be issued, so that a judgment may be rendered in accord with what is herein held.

*Id.* at 872. The trial court, in *Conners* on remand, apparently misconstrued the Supreme Court holding and on the second appeal Chief Justice Grafton Green repeated and described the procedure that should have occurred on remand. "The case was remanded to the circuit court, with directions to issue the writ 'to remove the proceeding from the inferior board for the purpose of revision, not for a trial *de novo*, but for review of the record to be certified from the inferior tribunal, and for judgment of quashal or affirmance.'" *City of Knoxville v. Conners*, 139 Tenn. 45, 201 S.W.2d 133 (Tenn. 1918). The continued of viability of the *Conners'* rule is attested in *State v. Leath*, 977 S.W.2d 132, 135 (Tenn. Crim. App. 1998).

*Palmer v. South Cent. Correctional Facility Disciplinary Bd.*, No. M1999-01611-COA-R3-CV, 2000 WL 1134529 at *4 (Tenn. Ct. App. Aug. 9, 2000) (no Tenn. R. App. P. 11 application filed).

## II.

In the case before us, the writ was never issued, and the record of the Board's hearing was not filed. Mr. Livingston's petition was met with a motion for summary judgment on behalf of the Board. Attached to the motion was an affidavit of the custodian of the records of the Board, certifying the authenticity of various documents, also attached to the affidavit, from the Board's files regarding Mr. Livingston. The affidavit does not state that those documents constitute the entire record of Mr. Livingston's parole revocation proceeding. Thus, the Board apparently filed portions of the record of its proceedings but did not file a certified copy of its entire record of the proceeding being challenged. *See* Tenn. Code Ann. § 27-9-109(a) (if writ is granted, the board or commission shall cause to be made, certified and forwarded to the court a complete transcript of the proceedings, including proof submitted). The Board also provided Mr. Livingston with a statement of undisputed facts, to which he responded. Both are in the record before us. The statements deal primarily with the basic procedural facts relating to the Board's proceedings and are corroborated by the attachments to the affidavit.

6

Creating an additional complication regarding the record is the apparent filing by the petitioner of an audiotape purporting to be a recording of the hearing at issue. Our record includes the tape in an envelope with a handwritten notation, "cassette tape attachment pltf's [plaintiff's] memo filed 9-3-98." Mr. Livingston filed a memorandum of law in support of his amended petition for writ of certiorari on that date. The tape itself has a typed label with the case name and number on it. The Board's brief includes a statement that neither the Board nor its counsel had been aware the tape had been filed until it was mentioned in the court's opinion. Thus, we can only conclude that the tape was not certified as an accurate transcription of the hearing at issue or as part of the Board's record. The Board has not objected to the inclusion of the tape in the record or its consideration by the trial court. To the contrary, the Board relies on the tape for some of the statements in its brief. Mr. Livingston has not and cannot object to the consideration of the tape since he supplied it.

We are aware that because the writ was not yet granted, the Board was under no compulsion to file its entire certified record. We are, nonetheless, troubled by a procedure wherein the Board files what appears to be a portion of its record and relies on that portion in seeking a judgment. The use of summary judgment in writ of certiorari proceedings is not unknown, even with regard to judgment on whether to issue the writ.[7] *See, e.g., Turner v. Tennessee Bd. of Paroles*, 993 S.W.2d at 80; *South v. Tennessee Bd. of Paroles*, 946 S.W.2d 310, 313 (Tenn. Ct. App. 1996); *Perry v. Campbell*, No. M1998-00943-COA-R3-CV, 2001 WL 46988 at *4 (Tenn. Ct. App. Jan. 22, 2001) (no Tenn. R. App. P. 11 application filed); *Blackmon v. Campbell*, No. 01A01-9807-CH-00361, 1999 WL 85518 at *1 (Tenn. Ct. App. Feb. 23, 1999) (no Tenn. R. App. P. 11 application filed); *but see Williams v. Tenn. Dept. of Correction*, No. 02A01-9503-CV-00046, 1995 WL 575142 at *4 (Tenn. Ct. App. Oct. 2, 1995) (no Tenn. R. App. P. 11 application filed) (summary judgment for department reversed where petitioner's sworn petition was treated as an affidavit opposing the motion for summary judgment and alleged facts supporting his claim of denial of due process, and department did not provide response sufficient to eliminate issue of material fact).

We note that the dismissal of the petition in *Blackmon* was in the nature of a dismissal for failure to state a claim because, as a matter of law, the punishment administered did not trigger due process requirements and because double jeopardy guarantees do not apply to prison disciplinary bodies. However, this court quoted the trial court as considering an affidavit filed in support of the motion for summary judgment which revealed that there was no genuine issue of material fact that the Board's actions were unlawful. Our opinion does not reveal the nature of the affidavit. To the extent it merely sets out the details of the punishment assessed by the disciplinary board, such information would merely be a procedural fact basic to the finding that due process was not implicated.

In *Perry,* the petition was met with a motion for summary judgment, and this court applied the standard of review for appeals from summary judgment. While we are unaware of the nature of

---

[7]Obviously, after the record has been filed, use of summary judgment on the question of whether relief is warranted does not raise the same issues with which we are concerned herein.

7

all the supporting materials supplied with the motion, our opinion discloses that each of the Board members filed an affidavit denying that race played any part in the Board's consideration, in response to the petitioner's conclusory allegations of racial bias. This is the type of information which will not usually be revealed in the record of the administrative proceedings and is the type of information which a trial court may allow to be introduced in addition to the record. *Hoover Motor Express.,* 195 Tenn. at 607; 261 S.W.2d at 239; *Brown v. Tennessee Real Estate Comm'n.*, 494 S.W.2d 506, 510 (Tenn. Ct. App. 1972) (additional evidence introduced before a court reviewing an action of a board or commission is limited to the question of whether the board acted illegally, arbitrarily, fraudulently, or beyond its jurisdiction; evidence on the merits of the controversy is limited to the record).

In *South*, this court treated the trial court's grant of a motion to dismiss as a grant of summary judgment since the trial court considered matters outside the pleadings. 946 S.W.2d at 313. The opinion's only reference to such matters is to an affidavit filed by the Board's staff attorney testifying as to the legality and regularity of the proceedings below. This court's decision, however, does not appear to rest upon that affidavit. Instead, this court determined that petitioner had not presented any evidence to substantiate his claim to a plea agreement which formed the basis of one of his arguments.

In *Turner*, the trial court granted a motion to dismiss for lack of jurisdiction and a motion for summary judgment. In support of its motion for summary judgment, the Board offered the affidavit of the custodian of the Board's records which "indicated that the conduct of the hearing was consistent with Mr. Turner's rights" and the Board's rules. 993 S.W.2d at 80. The affiant reviewed the audiotape of the hearing and identified five witnesses who appeared on the petitioner's behalf, and stated that letters and other documents submitted by the petitioner at the hearing were placed in his file. *Id.* This court observed that the petitioner had offered no evidence to refute the affidavit. However, this court's holding was not based upon any issues addressed in the affidavit; instead, we construed the petitioner's claims as an attack on the intrinsic correctness of the Board's decision. *Id*. at 81. In essence, this was a determination that the petitioner failed to state a claim upon which relief could be granted under the common law writ of certiorari, thereby justifying dismissal of the petition. *Id.*

Thus, summary judgment has been used to determine whether the writ, an order to file the record of the proceedings below, should issue. We do not question that there are situations where such procedure is the most appropriate way to proceed. For example, if the petition raises issues whose resolution depends on facts not in the administrative record, presentation to the court of those facts by way of an affidavit in support of a motion for summary judgment, with the opposing party having the opportunity to properly dispute such information, provides the court with a basis upon which to determine whether the record must be filed. *See, e.g.*, *Perry v. Campbell*, 2001 WL 46988, discussed above.

In other situations, a petition might be subject to dismissal for other reasons, such as the failure to comply with the time limitations for seeking review of a Board decision. *See Turner v.*

8

*Tennessee Bd. of Paroles*, 993 S.W.2d at 80. In such situations, if the petition has not stated the facts relevant to a determination of jurisdiction, the Board could appropriately file an affidavit with documentation reflecting the date of the Board's action. Because such filing would constitute matters outside the pleadings, such a motion would be converted to a motion for summary judgment. *Id.*[8]

However, we have concerns about indiscriminate use of a procedure which involves filing portions of the administrative record for two reasons. First, there is the danger of confusion between the issue of whether the writ should be granted to compel filing of the record with the issue of whether relief should be granted based on the record and the petition. Second, the statutory procedures established for review of decisions of administrative boards and commissions do not appear to contemplate filing of only portions of the administrative record. Because no other method of judicial review is provided for decisions of the Board of Paroles, the common law writ of certiorari procedure, as the legislature has defined it in Tenn. Code Ann §§ 27-9-101 through -114, applies. *See South v. Tennessee Bd. of Paroles*, 946 S.W.2d at 311.

We are reluctant to state, and specifically do not state, that summary judgment is never appropriate in a decision to deny issuance of a writ of certiorari to review a decision of an administrative board or commission. However, caution should be used to insure that such a procedure does not substitute a ruling on the merits based on a partial record for a ruling on whether the record must be filed in order to determine the merits.

In the case before us, we do not find any error in the summary judgment procedure which would require reversal of the trial court's decision. Further, because the record includes a statement of disputed facts and response which indicate no challenge to the procedural facts disclosed in the attachments to the affidavit,[9] and because there has been no challenge to inclusion or consideration of any of the material submitted outside the record, we will consider those matters as properly included in the record.

---

[8]On the other hand, an allegation that a board or commission has acted illegally, arbitrarily, or capriciously "typically involves a determination of whether the record contains material evidence to support the decision below. *See Hoover v. Metropolitan Bd. of Housing Appeals*, 936 S.W.2d at 950, 954 (Tenn. Ct. App. 1996); *Hall v. Shelby County Retirement Bd.*, 922 S.W. 543, 545 (Tenn. Ct. App. 1995); *Davis Group (M.C.), Inc., v. Metropolitan Gov't of Nashville and Davidson County*, 912 S.W.2d 178, 180 (Tenn. Ct. App. 1995); and *Metropolitan Air Research Testing Auth., Inc. v. Metropolitan Gov't of Nashville and Davidson County*, 842 S.W.2d 611, 619 (Tenn. Ct. App. 1992)." *Harless v. City of Kingsport*, No. 03A01-9707-CH-00289, 1998 WL 131519 at *4 (Tenn. Ct. App. Mar. 25, 1998) (no Tenn. R. App. P. 11 application filed). When faced with a petition making sufficient allegations of a lack of material evidence, it would be unusual for a court to make a determination that such evidence was presented without a review of the record. We doubt an affidavit with hearsay statements regarding the evidence, such as that offer in *Turner*, would suffice. *See Palmer v. South Cent. Correctional Facility Disciplinary Bd.*, 2000 WL 1134529 at *4-5 (dismissal of petition for writ of certiorari reversed because, the motion having been granted before the record was filed, no evidence in the record before the trial court supported the prison disciplinary board's decision).

[9]It is from the statement, response, and the attachments to the affidavit that we are able to glean the basic facts necessary to describe the procedural posture of this case. Petitioner does not admit, nor was he asked to admit, the accuracy of statements within documents submitted in support of the Motion for Summary Judgment.

III.

Before us for review is the decision of the trial court to deny issuance of the writ of certiorari. The court's decision to deny the writ must be analyzed by reference to the restrictions placed upon a court to review the Board's decision. Tennessee Code Annotated § 27-8-101 sets forth the purpose of judicial review by a common law writ of certiorari:

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial function has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

Courts employ a limited standard of review under the common law writ of certiorari. *Blackmon v. Tennessee Bd. of Paroles*, 29 S.W.3d 875, 878 (Tenn. Ct. App. 2000) (citing *Yokley v. State*, 632 S.W.2d 123 (Tenn. Ct. App. 1981)). Relief under a writ "may only be granted if the board has exceeded its jurisdiction, or has otherwise acted unlawfully, arbitrarily or fraudulently. *Id.* (citing *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871 (Tenn. Ct. App. 1994)). A court will not review the intrinsic correctness of the board's decision; in other words, one may say that "it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision is reached." *Flowers v. Traughber*, 910 S.W.2d 468, 470 (Tenn. Crim. App. 1995); *see also, Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d at 873.

> Generally speaking, review of an administrative decision by way of the common law writ is confined to the question of whether the inferior board or tribunal has exceeded its jurisdiction or acted illegally, arbitrarily, capriciously, or fraudulently. T.C.A. § 27-8-101 (Supp. 1997); *McCallen*, 786 S.W.2d at 638; *Hoover v. Metropolitan Bd. of Zoning Appeals*, 924 S.W.2d 900, 904 (Tenn. App. 1996); *Gallatin Hous. Auth. v. City Council, City of Gallatin*, 868 S.W.2d 278, 279-80 (Tenn. App. 1993).
>
> *****
>
> If a reviewing court determines that there is no material evidence to support an administrative decision, it "must conclude that the administrative body acted illegally." *Hoover v. Metropolitan Bd. of Zoning Appeals*, 924 S.W.2d at 904-05. An administrative decision may be found to be illegal, arbitrary or fraudulent in other circumstances as well; for example, where the standards of due process have not been met, where a constitutional or statutory provision has been violated, or where some unlawful procedure has been followed. *Id.* at 905; *Brooks v. Fisher*, 705 S.W.2d 135, 136 (Tenn. App. 1985).

*Harless v. City of Kingsport*, 1998 WL 131519 at *4-5. As a general proposition, the decision of an administrative board is considered to be arbitrary if it lacks a rational basis. *Mobilcomm of Tennessee v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 101, 104 (Tenn. Ct. App. 1993) (citations omitted).

10

Where a petition for writ of certiorari fails to sufficiently allege one of the grounds upon which a court may engage in a review of an administrative decision, denial of the writ is appropriate. The decision whether to grant the writ, thereby compelling the filing of the record, lies within the sound discretion of the trial court. *Boyce v. Williams*, 215 Tenn. at 713-714, 389 S.W.2d at 277. Denial of the writ is appropriate where the petitioner fails to show any requisites for the issuance of the writ. *Id*. at 709.

IV.

Mr. Livingston's petition rests on due process claims, and an allegation of denial of due process is an allegation that the Board acted illegally. *Davis v. Campbell*, No. 01A01-9712-CH-00755, 1998 WL 813533 at *1 (Tenn. Ct. App. Nov. 25, 1998) (no Tenn. R. App. P. 11 application filed); *Maney v. Tennessee Bd. of Paroles*, No. 01A01-9710-CV-00562, 1998 WL 755002 at *3 (Tenn. Ct. App. Oct. 30, 1998) (no Tenn. R. App. P. 11 application filed); *Williams v. Tenn. Dept. of Correction*, 1995 WL 575142 at *2. Specifically, he asserts that his due process rights were violated due to the introduction of evidence including a confidential informant statement, unsigned indictments and a newspaper article about himself. He claims that the information contained in these pieces of evidence were inadmissible and biased the hearing officer, thereby depriving Mr. Livingston of a fair and impartial hearing.

It is well settled that according to both the United States Supreme Court and the Tennessee Supreme Court, parole revocation hearings are meant to be informal, and the due process rights to which a parolee is entitled are limited. *Morrissey v. Brewer*, 408 U.S. 471, 480, 489 (1972); *State v. Wade*, 863 S.W.2d 406, 408 (Tenn. 1993).

> [R]evocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. Parole arises after the end of the criminal prosecution, including imposition of sentence . . . Revocation deprives an individual, not of absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.
> *****
> We emphasize there is no thought to equate . . . parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

*Morrissey v. Brewer*, 408 U.S. at 480, 489.

Parolees facing revocation of their parole are, however, entitled to certain minimal due process rights. These include:

> (a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in

11

person and to present witnesses and documentary evidence; (d) the right to confront and cross examine adverse witnesses (unless a hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole.

*State v. Wade*, 863 S.W.2d at 408 (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973); *Morrissey v. Brewer*, 408 U.S. at 489).

The statutes and administrative rules governing the Tennessee parole board grant wide latitude and discretion in the admission and review of evidence. For example, Tennessee Code Annotated § 40-28-106(f) states in pertinent part, "[n]otwithstanding other provisions of law to the contrary and unless prohibited by federal law in a specific instance, the board shall be granted access to any record or information, public or otherwise, which it deems necessary to carry out its duties." Also, the administrative rules of the Tennessee Board of Paroles state "[a]ll parole revocation hearings shall be conducted in a manner as informal as is consistent with due process, and the technical rules of evidence shall not apply to such hearings." Tenn. Comp. R. and Regs. ch. 1100-1-1-.13(9)(i).

Mr. Livingston's first claim on appeal is that the hearing officer improperly admitted a confidential affidavit into evidence.[10] He states in his petition that "the parole officer had brought a sworn affidavit from a 'protestor' that feared for their life, if the Petitioner was released." Mr. Livingston claims that his due process rights were violated by admission of this affidavit and that he had a right to confront and question adverse witnesses. With regard to the right to confront witnesses, this court has stated:

These minimum standards reflect a preference for permitting parolees to confront and cross-examine their accusers; however, they also permit the Board's hearing officers to dispense with confrontation and cross-examination for good cause. However, the State even concedes that parolees must be given "an opportunity to cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing confrontation." Thus, when good cause exists, hearing officers in parole revocation hearings may permit the introduction of letters and affidavits that, by their very nature, have not been tested by confrontation and cross-examination. *See Morrissey v. Brewer*, 408 U.S. at 489, 92 S. Ct. at 2604; *Sanders v. Tennessee Bd. of Paroles*, 944 S.W.2d at 397. The issue that remains to be decided concerns what must be proven to demonstrate good cause for denying a parolee the opportunity to confront and cross-examine adversary witnesses.

Good cause is not a precise standard, and there is no bright-line rule for determining whether good cause exists. The inquiry is factually driven and may, in large measure,

---

[10]Because the administrative record was not filed, the actual affidavit is not in the record before us.

depend on the nature and purpose of the evidence sought to be introduced. Thus, for example, persons who desire to express an opinion either favoring or opposing the revocation of parole based on the parolee's character, the nature of the parolee's underlying conviction, the parolee's institutional conduct, or the parolee's reputation in the community need not be subjected to confrontation and cross-examination because their statements are simply personal opinions. The Board receives these sorts of letters and communications every day, and it would add little to the integrity of the hearing process to require persons desiring to give opinions of this sort to appear in person at the revocation hearing to offer them.

Testimony establishing the grounds for revoking a parole should be treated more rigorously because it provides the basis for depriving the parolee of his or her liberty. Rather than being merely statements of personal opinion, this testimony is being offered to prove the truth of the matters contained in it. Accordingly, the requirements for its admission must contain reasonable safeguards to ensure that the testimony is truthful and accurate.

*Miller v. Tennessee Bd. of Paroles*, No. 01A01-9806-CH-00293, 1999 WL 43263 at *5 (Tenn. Ct. App. Feb. 1, 1999) (no Tenn. R. App. P. 11 application filed). This court concluded that when presented with hearsay evidence **to prove a parole violation,** hearing officers must satisfy themselves either that the evidence is inherently reliable or that it has already been subjected to adversarial questioning and must make the "good cause" determination using applicable standards. As the *Miller* opinion suggests, other types of materials, not introduced to prove the parole violation, are not subject to such requirements, and good cause may be more easily found.

The evidence Mr. Livingston objects to is characterized by him as a "confidential affidavit." In his brief he states that, "the testimony of the witness failed to support or disprove the rule violation," referring to the confidential affidavit. In its brief, the Board merely relies on Mr. Livingston's petition, which characterized the affidavit as "from a 'protestor' that feared their life." The petition clarifies the situation a little. Although Mr. Livingston objected to use of a confidential informant's affidavit used to secure the search warrant which resulted in finding the gun and ammunition in his apartment and presented arguments why the affidavit was not a sufficient basis for the issuance of the warrant, that affidavit is not the one to which he objects on appeal. The search warrant issues arose the first hearing. In another section of his petition, Mr. Livingston states:

In the second hearing, denominated an "appeal," it was apparent that the hearing officer was merely searching for a reason to justify the original violation. The Petitioner was told there were protestors (Hayes and the parole officer who issued the violation warrant); and that the parole officer had brought a sworn affidavit from a "protestor" that feared their life, if the Petitioner was released.
This was a clear and blatant attempt to illegally hold the Petitioner. This was a "violation" hearing, (which was supposed to concern a gun) not a parole hearing. Neither the Petitioner's parole officer nor the detective could "protest" him, if it had been a parole hearing. And, the statement provided by the parole officer along with

a newspaper article he just happened to bring with violated Petitioner's constitutional rights.

The person who signed the statement is a police informant, with a lengthy arrest record, who cut a deal with the State.

Thus, although Mr. Livingston apparently believes the two affidavits originated from the same person, it is the second, wherein the affiant apparently indicated a preference for revocation of Mr. Livingston's parole, that is the subject of the issue before us. The amended petition makes the nature of the document clear:

Hearing officer Francis Lloyd, prior to hearing evidence in the appeal, emphatically stated that no new evidence would be heard. Only that evidence, originally presented, would be introduced at the appeal hearing. Yet, in the face of this instruction, the appeal officer allowed new testimony in the way of a "notarized, confidential affidavit" from a "secret" witness. **The brunt of that testimony concerned allegations of unsubstantiated threats made by or on behalf of the plaintiff against this, still unknown protester.** A protester who did not submit testimony at the original revocation hearing. (Emphasis added.)

These statements establish that the hearsay evidence or statement he complains about was not related to the issue of whether he had violated his parole. Rather, it falls within the type of communication the Board receives regularly from persons expressing opinions about the action the Board is considering.

In that context, threats or a finding the witness would be "exposed to significant risk of harm" constitute good cause reasons for not requiring confrontation. *Morrissey v. Brewer*, 408 U.S. at 486-87. Based upon these authorities and the statement in Mr. Livingston's petition regarding the affiant's fear for his life, the trial court found no due process violation. We agree. Because Mr. Livingston does not deny that the witness feared for his or her life if forced to testify in person, we find no merit in this claim.

Next, Mr. Livingston alleged that a newspaper article contained in the file of the State violated his due process rights.[11] With regard to this issue, the trial court stated, "this Court has reviewed the audio record of the . . . revocation hearing and finds that this article was not accepted as evidence or made a part of the record at the hearing. The hearing officer specifically stated that he had not read the article in question, nor would he read it." The mere presence of the article without it being accepted into evidence or considered by the decisionmaker renders Mr. Livingston's claim moot. We find that Mr. Livingston's due process rights were not implicated whether the article was considered by the hearing officer or not. The Board is allowed wide discretion, not subject to the rules of evidence, to consider evidence, information, or documentation that it considers

---

[11]Mr. Livingston attached a copy of a newspaper article to his petition. We assume it was the article he complains about.

14

helpful in carrying out its functions. Therefore, we find Mr. Livingston's allegations in this regard to not constitute an allegation that the Board's decision was unlawful, arbitrary or fraudulent.

The Board asserts that issue of the unsigned indictments was raised for the first time on appeal. The trial court did not address them, and there is no evidence they were raised below other than Mr. Livingston mentioning them in his Amended Petition in support of his "biased hearing officer" claim. Mr. Livingston did not argue in the court below that the introduction of the unsigned affidavits was in error, but instead argues that their introduction "worked to taint his [the hearing officer's] objectivity in deciding this issue, and was thus, an arbitrary and capricious denial of due process." Therefore, because Mr. Livingston raises the issue of the introduction of such evidence for the first time on appeal, we will not consider the claim.[12] This court can only consider such matters as were brought to the attention of the trial court and acted upon or permitted by the trial court. *Irvin v. Binkley*, 577 S.W.2d 677, 679 (Tenn. Ct. App. 1978) (citations omitted).

Petitioner has failed to allege facts to support a claim that the Board violated his due process rights by admitting certain evidence or otherwise acted without jurisdiction, arbitrarily, or unlawfully. Because the trial court's review of the Board's decision would be limited to a determination of those questions, denial of the writ on the basis of these allegations is affirmed.

We note that Mr. Livingston admits in his petition that his possession of a gun would be a violation of his parole conditions. Evidence was presented at the revocation hearing that a gun and ammunition were found in his bedroom closet. Thus, the Board clearly had a rational basis for its determination that he had violated his parole. *See Maney v. Tennessee Bd. of Paroles*, 1998 WL 755002 at *4; (citing *Mobilcomm of Tennessee v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d at 104).

Mr. Livingston had earlier argued that there were problems with the search warrant that led to the discovery of the gun and ammunition, but has dropped those arguments on appeal. He still maintains, however, that the gun was not his and that the Board should have credited the testimony of a witness who claimed ownership of the gun.[13] These assertions are basically challenges to how the Board weighed the evidence before it and, therefore, attack the intrinsic correctness of the Board's decision. As explained earlier, courts are not authorized to inquire into the correctness of an administrative decision by writ of certiorari. *Robinson v. Truaghber*, 13 S.W.3d 361, 364-65 (Tenn. Ct. App. 2000). Additionally, a court reviewing an administrative board's decision is not

---

[12]Additionally, there is no evidence in the record before us that the unsigned indictments were even considered by the hearing officer. They appear to be included in the hearing officer's statement that he would not consider certain items in the file.

[13]At the first hearing, there was testimony in the record from Dallas Hopson stating that he owned the gun and had taken it to Mr. Livingston to see if Mr. Livingston would loan him some money on it. He further stated he left the gun at Mr. Livingston's apartment, without his knowledge, after being told Mr. Livingston's parole guidelines would not allow him to own a firearm. At the second hearing, Mr. Livingston admitted to having handled the gun when it was brought to him but testified he returned it and told Hopson that he could not pawn it because he was on parole.

15

permitted to weigh the evidence presented to the board. *Gallatin Hous. Auth. v. City Council, City of Gallatin*, 868 S.W.2d at 280; *Hoover v. Metropolitan Bd. of Zoning Appeals*, 924 S.W.2d at 904 (citations omitted). Moreover, the reviewing court "should refrain from substituting its judgment for the broad discretionary authority of the ... governmental body." *McCallen v. City of Memphis*, 786 S.W.2d 633, 642 (Tenn. 1990).

V.

Next, Mr. Livingston asserts that the hearing officer was biased. Due process, including the protections afforded parolees facing revocation of their parole, requires a neutral and detached decision maker. *See Jones v. Greene*, 946 S.W.2d 817, 825 (Tenn. Ct. App. 1996) (citations omitted) (due process guarantees a party to an administrative hearing to a fair and impartial tribunal). In the case before us, however, Mr. Livingston does not allege that the hearing officer was biased against him because of matters outside of and unrelated to the revocation proceeding. He alleges, instead, that the hearing officer's bias was created by the introduction of inadmissible and prejudicial information, the statement and article discussed above. In his amended petition, Mr. Livingston states, "Mr. Lloyd, who may very well have intended to conduct a proper hearing, was, nevertheless, not fair or impartial due to the entry in the record of invalid, inappropriate and prejudicial evidence. Copies of newspaper article, unsigned indictments and improper testimony, allowed by the appeal officer, worked to taint his objectivity in deciding this issue, and was thus, an arbitrary and capricious denial of due process."

There is no evidence in the record to support these conclusory allegations by Mr. Livingston that the hearing officer was biased against him or was improperly led to his decision by bias. It is well settled that conclusory allegations will not support a denial of a motion for summary judgment. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). Conclusory allegations of illegality or arbitrariness, or of bias or other due process violation, are similarly not sufficient to avoid dismissal of a petition for writ of certiorari. *Davis v. Campbell*, No. 02A01-9611-CV-00268, 1997 WL 777079 at *4 (Tenn. Ct. App. Dec. 18, 1997) (no Tenn. R. App. P. 11 application filed). Furthermore, a party seeking to overcome the well-established presumption that administrative decision makers will discharge their duties with honesty and integrity has a difficult burden. *Cooper v. Williamson County Bd. of Educ.*, 803 S.W.2d 200, 203 (Tenn. 1990). The averments by Mr. Livingston do not create an issue justifying court review of the Board's decision.

Further, the fact that Mr. Livingston argues that the hearing officer became biased by the evidence considered at the hearing defeats his claim. Generally, the terms "bias" and "prejudice" refer to a state of mind or attitude that works to predispose a judge for or against a party. *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). Further,

> Not every bias, partiality, or prejudice merits recusal. To disqualify, prejudice must be of a personal character, directed at the litigant, "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case."
>
> ***

16

If the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge. . . . However, if the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial.

*Id.* (citations omitted.). *See also Spain v. Connolly*, 606 S.W.2d 540, 544 (Tenn. Ct. App. 1980).

Therefore, Mr. Livingston has not alleged any basis for an inquiry into whether the hearing officer was biased. The denial of a writ in order to undertake such an inquiry was correct.

We have held that the evidence Mr. Livingston claims biased the hearing officer could have been properly considered by him. Additionally, there was a rational basis for the revocation decision, based upon other proof, and there is absolutely no basis presented for any assumption that the decision was the result of any bias on the part of the hearing officer.

VI.

For the reasons set forth herein, we affirm the dismissal of Mr. Livingston's petition for common law writ of certiorari. Costs of this appeal are taxed to Mr. Livingston for which execution may issue if necessary. This cause is remanded to the trial court for any further actions necessary consistent with this opinion.

_____
PATRICIA J. COTTRELL, JUDGE